Tilghman C. J.
Caleb Wiley, the plaintiff below, claimed as heir of the body of Susanna, the daughter and devisee of Caleb Prew, who was seised in fee of the land in dispute in this ejectment. The first question is, What estate was given to Susanna, by her father’s will, which was expressed in the following terms..
[The Chief Justice then read that part of the will, on which the question turned.]
Without doubt,. Susanna took an estate tail; for although in the immediate' devise to her, there is no limitation to the heirs of her body, and the charging her with the payment of two thirds of the value, would seem to indicate an intention of giving her the land in fee, yet the intention to give no more than an estate tail, is to be clearly inferred, from the subsequent expressions ; for after giving an express estate tail, to his daughter Betty, the testator adds, and if .either of my said children should die without issue, then the inheritance, to descend to the next elder. Now this shews, that he meant both the preceding devises to be of the same nature, so that Betty’s being an estate tail, so.likewise must Susanna’s be. But this is not all; for the testator, determin,ed to remove every shadow of doubt, with respect to his indention, proceeds to declare it to be his will, that all his land shall descend to. the lawful heirs, from-generation to generation, which could no otherwise be effected, than by estates tail given to each of the devisees.
The plaintiff being the heir of Susanna in tail, would be entitled to recover, then, unless something has occurred to destroy the entail. No fine or common recovery has been suffered; but the defendant contends, that the entail was broken-by virtue of a judgment and execution, in an action brought in the year 1745, by Sarah and Mary Prew, against Susanna, and her husband William Wiley, for the recovery of two-thirds of the value, with which the land devised to Susanna, was charged. It is a very ancient transaction, and it seems that the"record of this judgment is not complete. No declaration is to be found, but it appears to have been an action of debt, for 250/., brought against William Wiley and Susanna his wife, “ late Susanna Prew, daughter and devisee, in the last will and testament of Caleb Prew, deceased.” There can be no doubt,-but this action was-brought for the recovery of the money charged on the land devised *521 to Susanna, and payable to her sisters, because it never has been the practice in this State, to bring suits against an heir or devisee, for debts due from the testator. In such cases, the action is brought against the executor, and on a judgment against him, an execution issues, which may be levied on any lands of the testator, whether they be held by the heirs or devisees. The question will be then, whether, in case of a legacy charged on land, an action will‘lie against the devisee, or terre-tenant, and the legacy be recovered by a sale of the land. If \ve had a court of chancery, the remedy of the legatee would be found there. . In Clowdsley v. Pelham, 1 Vern. 411, lands were devised in tail, with an order, that the devisee should pay the testator’s debts. The Court decreed the land to be sold for the payment of debts.' Ahd in Wareham, &c. v. Brown, &c., 2 Vern. 153, the land was decreed to be sold, where it had been devised in- tail, charged with the payment of debts and legacies. In England, where the remedy in chancery is easy, we are not to expect many cases, in which this point has been .agitated, in the Courts of common law. Perhaps it may be considered as doubtful, whether, there, an action for the recovery of a legacy charged on land, be at this day sustainable in a court of common láw, although Holt Ch. J., is reported to have affirmed that it is, in the case of Ewer v. Jones, (2 Ld. Raym. 937. Salk. 415. 6 Mod. 26.) I say it may be considered as doubtful, because notwithstanding the great authority of Ld. Ch. J. Holt, no record has been produced of any such judgment in England, since the time of the Commonwealth. But it appears from the case of Nicholson v. Sherman, in the 13th year of Charles II., reported in 1 Sid. 45, and T. Raym. 23, that during the time of the Commonwealth, the courts of common law sustained actions for the recovery of legacies, from necessity, because the ecclesiastical courts were abolished, and chancery had not then assumed jurisdiction incases of legacies. Now the same necessity exists at the present moment in this Commonwealth, and therefore, the Courts should assume the same jurisdiction. I speak now of legacies not within the provision of Our act of assembly; legacies, charged upon land, and not payable out of the personal estate. But, it has been said, that there is no necessity, for this kind of action, because the legatee may support an ejectment for the land, out of which the legacy is payable. If he *522 may, it must be also from necessity, because the land is not devised to him, either directly or indirectly. And if we are .to have recourse to some action from necessity, it will be •best to adopt that, which is best suited to the nature of the case. ' What we are in want of, is a mode for raising a sum of money out of land. This may be done' by an action, demandingthe' money, ahd not the land ; by virtue of which, the land may be sold. Rut this cannot be done by- ejectment. For what is the legatee to do, after he has recovered possession of the land in an ejectment? He has no title to the fee; -he has no right to sell; he only holds the land, as security for the legacy. ‘ Is he to keep an account of the profits, and hold, only until he receives satisfaction for the legacy and interest? This is,involving him in a most inconvenient transaction, andnotanswering the intention of the testator, which Was,-that'the legatee should have the money,, and not thé latid. -This-difficulty seems to have struck the minds of .-the counsel who brought the action for Sarah and Mary Prew, so long agoyas the'year 1745, and to surmount it, they brought an action, by virtue of which the fee simple might be sold.' It would have answered no purpose for the sheriff to expose to salé, the estate tail which was vested in Susanna Wiley. All the right which she had, would have expired at her deáth, and then, the issue in tail would have entered. No purchaser vvould have offered more,'than if he had been bidding for an estate during the life of Susanna Wiley. The .President of the Court of-Common Pleas, in delivering his opinion to the jury, has taken for' granted, that the judgment affected only the'estate tail, and if it were so, the conclusion which he >has drawn, is undoubtedly correct. But it appears to me, that he was mistaken in his premises, because the judgment was to be satisfied, not out of the estate of Susanna . Wiley, the devisee, but out of the estate of her father, the testator, who gave her the estate tail, charged with the legacies to her sisters. ■ We have had occasion to consider this matter, in the case of Brown, &c. (in error.) v. Furer, &c.,(a) decided at Lancaster., the last May Term; and although the point was not absolutely decided, yet the Court strongly intimated its opinion, that, where á legacy was charged on land, the legatee might support-an action against the executor, and terre-tenant, the judgment in. which, might be exe *523 cuted on the land, without affecting the persons of the defendants. •. In the argument of that case, a 'precedent, was cited,- of an action brought by a legatee against the executor, and terre-tenant, in the case of Patterson v. M'Causley's executors, &c., in the Court of -Common Pleas of Lancaster county, and the declaration, was said to have been drawn by Mr. Bur cl, the late prothonotary of this Court. It would seem proper, that the executor. should-be made a party to the suit, or. at least should have notice, with liberty to appear and plead that the real estate of the testator, was. not more than sufficient to satisfy his debts;, because,' the. whole real estate being assets for the pay’ment.of debts, it was not in the testator’s power to exempt it from that payment; and-if there was no surplus, the legácies would fall. Whether the action of Prew, v. Wiley and wife, was brought in the proper form, is not now the question. .If the judgment was erroneous, the issue in tail might have reversed - it, on a writ of error; but even if reversed, the sale of the.land by the sheriff, under which the defendant claims, would have.stood firm. . . -
The public interest demands, that there should be some certain remedy for the recovery of legacies charged on land. This necessity has long been, felt, and I am of opinion, that the courts of law have it in their power to give relief, and that relief was actually given, in the action. of Sarah and Mary Prew v. William. Wiley and, wife. By virtue of the judgment in that action, the estate of the testator was.sold, to satisfy-the legacies given to'his daughters; and conse-quently, the estate tail, devised to Susanna Wiley, was destroyed, and an indefeasible estate in fee, passed by the sheriff’s deed, to the purchaser. I am therefore of opinion, that judgment should be reversed, and a venire facias de novo •. awarded. ■ . ,
Gibson J.
Were it clear the testator intended to give Susanna a fee; I think the limitation over -might be supported as an executory devise; for being to the next elder of per? sons then in existence, it would clearly, indicate that, the failure of issue contemplated was to take place, if at all, in. the life-time of at least one of those persons. L admit also, where a general failure is not contemplated, but an estate is limited ■ to go over on failure of issue of the first devisee, *524 within a-period not too remote for an executory devise, that the mentioning of this particular kind of failure,«alone, will not be taken as a limitation of an estate tail, by implication, to the first devisee, but as a designation of a contingency, on the happening of which the limitation over is to take effect, without regard to the quality of the estate in the first devisee. If, therefore, the matter stood on this particular clause, I should suppose Susanna (without entering into the ques-. tion, whether she took for life or in fee,) did not take an estate tail.- But other expressions convince me the testator intended she should take in tail; and if that be clear, any words denoting such intention will be sufficient. Indisputably his object was, to keep his estate in his family. He had two plantations and four daughters. One plantation equal in value, it may be supposed, to her proper share, he devises to Betty in tail, by express and technical words. To Susanna, he devises the other plantation, equal in value to the shares of the other three, charged to the amount of two-thirds of its value in favour of Sarah and Mary. He then provides, that if either of his children should die without issue, the inheritance should go to the next elder,< she dividing the value among the. survivors or their heirs ; and then comes an emphatical declaration of intention; “ all my said lands to descend to the lawful heirs, from generation to generation." From his evident aversion from dividing his land qmong his children, (keeping it in statu quo, and giving to two qf them a compensation in money,) and his decisively expressed meaning, that the land should descend to the lawful heirs from genera- . tion to generation, it is clear his general and paramount intent was, to render his estate inalienable, as far as the law would permit; and that intent we are bound to execute, by moulding the different estates, so as to give it effect, even at the expense of any particular minor intent that might happen to be inconsistent with it. Now if we suppose a fee in Susanna, with an executory devise over, it is clear, if she or her issue had survived the person designated as the next elder of her sisters, or at least if she had survived them all, the devise over would have been gone, and the estate being absolute in Susanna, might instantly have passed from the family by alienation. It is, therefore, immaterial, whether, the omitting words of intailment in the devise to Susanna were accidental or not; it-is evident the testator could not have meant the es- *525 rate should go over, in the event of her dying without issue in the life-time, only, of the next eldest sister, but on a general failure of Susanna’s issue, whenever it might happen. It is of no consideration, that, giving Susanna an estate tail, she might have suffered a recovery, and consequently, by this construction, the intention was equally liable to be defeated. That was a liability, arising dehors the provisions of the will, and- against which the law did not permit the testator to guard. As far as depended on the acts of the testator himself, the giving a fee tail to his children was the method most likely to confine, indefinitely, the descent to their issue. And besides, it is not perfectly clear, that before the act of 1750, common recoveries had any definite, legal, existence in Pennsylvania, and the testator died before that period. From the whole of this will, taken together, I am clear it was not in fact the intention, that the land in dispute should go over in no other event than Susanna’s dying without issue, living her elder sister; it was to go over on a general failure. If so she' took a fee tail, and the limitation to the next elder, is good by way of remainder. It is worthy of remark, also, that the land devised to Betty, (to whom an estate tail is expressly given,) is to go over on the same contingency as regards her, the same clause embracing both devises; and clearly as to Betty, a general failure was intended. This, therefore, plainly indicates the kind of failure contemplated as to Susanna. It would be strange, if the same clause should receive one construction, when applied to one devisee, and a different one when applied to' another. It is indeed held, that as regards real and personal estate, this clause of dying without issue, may be differently construed when applied to the one and to the other species of property, the personalty being more favoured in this' respect, on account of the interest of the heir being out of the way, and also, because goods are not the subject of intailment. Forth v. Chapman, 1 P. Wms. 663. But the clause is taken in two different senses, only where the intent will be best answered by so understanding it. Richards v. Lady Bergavenny, 2 Vern. 324. Here the reason does not hold, as the interest of the heir is not concerned on either hand, the limitation over being at all events good, either as a remainder or an executory devise, and the intent is best promoted by understanding the words in the same sense when applied to each devisee; *526 and to.this I may add, there is no case where a difference: has been taken when the clause was to be applied, to different devisees, and not. to different kinds of property. .
' An argument is raised, from Susanna having taken the land charged with two-thirds of its value, and it is inferred, she must have taken a fee to prevent her from being a loser by .the devise. In all the cases on this subject the question was between an estate for life nnd a fee;, hereit is between fee. tail and fee simple. I cannot say there is any thing in this .charge of two-thirds of. the fee .simple value, as I understand it, that would, independent of other circumstances indicating the quantity of. her, interest, carry the estate of Susanna beyond the term of her own life. : The devise was not on condition, of paying the sum charged; and.the. legacy is barely charged on the estate devised, without any-personal charge on Susanna, in respect of such estate in her hands. Where there is ho.personal charge on the devisee, a charge on .the .estate, will, not enlarged his interest by implication. ■Cruise Dig. tit. Dev. ch. 11. sect. 59. . But in all the cases,of this class, the condition of paying a sum of money, .the charging, the land with payment of debts or legacies, or the apparent necessity of a fee to enable the devisee to perform a duty enjoined on him, are all circumstances from which, in defáult of express words of limitation, an intention to give an estate of inheritance may be presumed, and in such case, if nothing else appear, the law will presume the.largest estate was -intended. The whole, however, is a ■question of intention, and if it. appear, that more than an estate for. life, and less .than a fee, was intended, why should such intention not prevail ? An estate for life or in tail, created by express words, may be' charged with payment of money, without the charge- having the effect of enlarging the estate, and there can be no difference whether the intent be denoted by express words, or implied from circumstances sufficiently clear; in this case the intention to give Susanna a fee tail is manifest.
But whether the estate tail of Susanna was barred by the' sale under the-judgment against her and her husband, is a question about which I feel great difficulty, and I therefore express an opinion on it with unfeigned diffidence. The length of time that has intervened since the sale, the hardship of the case as to purchasers, and all equitable conside *527 rations, I lay entirely out of the question. The issue in tail stands on.a legal title, and is not calling on a court of chancery to interfere in' his behalf. And would chancery decree an injunction in favour of a purchaser of a fee'tail, at a sale not pursuant to' any mode by which, according to law, the1 interest of the issüe could be divested, even though the purchase' money had been applied to the extinguishment of a charge on the estate; and so far operated'beneficially for the issue? If the Court had not jurisdiction in the form'of action resorted to for compelling payment of the legacy charged, and could not raise the money out of the land by a sale, the purchaser paid .his money at his peril, and cannot charge the land with any equity against the issue. There might, however, be acts ■ doné by the issue, inducing the purchaser to buy, which would amount to a positive fraud on his part and would affect him personally, but nothing of the kind appears in the case we have before us, nor does it appear the Court below was called on to pronounce an. opinion on the consequence of such acts, if they did. exist; and I cannot consent to reverse a. judgment, for error’in an opinion never delivered. The naked question then is, would such a sale, at this day, be good to divest the estate of the issue in tail ? ■For if his legal title be not completely barred he must prevail.A legacy cán only be sued for in chancery; for although the ■courts of common law for a short period' did, from necessity, entertain actions for legacies, yet the practice ceased with the' necessity' that gave rise to it; it was not that- they 'would not, but, that they could not take cognisance of. such cases; after'the appropriate tribunal was open, the practice ceased. The act of assembly giving jurisdiction to our common law courts^ does not embrace a case like the present, where a devisee • and not the executor, is the person to be called on for payment; It must be admitted the action is a novelty; but I would not object on that ground,'if it were calculated to effect the object with the least possible inconvenience, and at the sanie time secure those'interests.that on such'an occasion would be the first care of a court of chancery. Not having that court, we are frequently obliged to turn our limited means to the best account, by sustaining actions in our courts of common law, that would never be thought of where the benéfits'of a court of equity are enjoyed. In England the remedy in a case like the present, would be in *528 chancery; (for the stat. 3 W. and. M. c. 14, provides an action for a ve.ry different case,) and I grant chancery would extinguish the estate of Susanna by decreeing a sale of the fee. But then no moré would be sold than would be absolutely necessary to raise the sum required; the residue must be left for the issue. Randall v. Bookey, 2 Fern. 425. But if to prevent deterioration from a division, it .were found necessary to sell the whole, the surplus after paying off the incumbrance would be considered as real estate. Maugham, v. Mason, 1 Ves. & Bea. 416. Possibly if the tenant in tail were, not a feme covert,payment might be decreed directly to such tenant, because having power to suffer a common recovery and turn even entailed property into money, it would be a useless precaution to order the surplus to be invested in land under the same limitations as the estate sold. But in the case of a feme covert the case would be widely different, and chancery would never permit the husband to lay his hands on any part of the proceeds of his wife’s real estate. Here, where we cannot insist on an adequate settlement, even in the case of personal property the evil would be much greater. We ought, therefore, to protect the feme covert tenant in tail, and as far as we can the issue from the rapacity of the husband and father, who from an improper use of his controul, may prevent his wife from exonerating the estate, that he may get possession of the wreck of it. We should prevent too a valuable éstate from being put under the hammer to discharge- an incumbrance of perhaps the fiftieth part of its value. By a personal action none of,these objects can.be attained ; the whole is sold, if the rents and profits will not pay the charge in seven years, which if the land be not improved, is a matter past being hoped for; the issue is disin-. herited, and the husband gets possession of his wife’s interest without settling a farthing on her and her children.
In Pennsylvania, the action'of ejectment has been resorted to as a means of compelling payment of money charged on land, where there was no common law remedy. This form in a case like the present, would be found as efficacious as a personal action, and attended with fewer inconveniences. Where the land is the fund for payment, and the owner will not raise the requisite sum, it seems more reasonable and more analogous to the practice of chancery, whose decree in such case is specifically in reniño proceed against the fund ex *529 clusively, and. deliver it to the creditor subject to bc redeemed by payment of principal and interest. I can sae nothing incongruous in this ; because there being no personal liability, the'fund alone is debtor, and the creditor must be considered as having an interest inthe land itself. Why may not that interest support an ejectment as well as an equitable lien, which was deemed, sufficient iii Irvine v. Campbell, 6 Binn. 118. This mode would have ‘this great advantage, that the nature of the> property would not be changed by the pro‘cess,and when the estate should be redeemed, the former interests would still .exist. The objection to this, is, that money'being the -object of the legatee, land in lieu of it, would not answer his purpose, especially if it were unimproved. I grant its force. But it is tó be remembered, that' only a court of, chancery can do effectual justice, and that every form of proceeding we may devise, will, be defective : the inquiry is, what is least so ? A fear of losing possession would stimulate the owner of the land to exertion in raising the money.; but even should the legatee be driven, to an ejectment, he might, in-most cases, raise the sum due a sale, after recovery, subject to the right of redemption, as no doubt purchasers on,such terms might be found. In fact, previous to the act of. 1/05, giving a scire facias to a mortgagee, he had no remedy but an ejectment, for recovery of the mortgage money, and then the same inconvenience was suffered; yet it was a considerable time before the legislature interposed, and I never heard, that at any time previous to the act, an action of debt bn a mortgage was sustained.
Inthe case of Brown v. Furer, the Chief Justice inclined to the opinion, that a personal action might be sustained ; but that was’ not the point decided. The single question was, granting the action lay, whether proper persons were parties on the record. I cannot say, whether this question formed a part of the argument, as I was not present. I should most probably have concurred even if I had heard the argument; for the circumstances of the case were not calculated to present to the mind the inconveniences resulting from a personal action. According to my recollection the interest of a feme covert, or issue in tail, was not involved. Under these circumstances I assented to the opinion delivered.
Although I incline to give the ejectment a preference over a personal action,.yet it is necessary some mode should be *530 pointed out by which a legacy payable by a devisee may be «(¡covered, and therefore, notwithstanding, I am for affirming the judgment, I shall acquiesce in considering the decision of this case as settling the law.
There is no force in the argument, that the plaintiff below is estopped, by having purchased land from the executors of Wiley, who was the purchaser at sheriff’s sale. The plaintiff purchased merely what the sheriff had a right to sell; that is, the life estate of the tenant in tail, at that time an existing interest. Although the Court may not have had jurisdiction over the subject matter, in the form of action resorted to, still the judgment was not void, but irregular, and like a judgment in an action of debt for any other cause, being entered generally, it bound only that interest which the defendant had in the land. This consideration, also, would prevent the operation of the statute of limitations, if that point had not been abandoned on the argument here.
Duncan J.
The words of the will of Caleb Prew, and state of facts which gave rise to the present controversy, are these.
[Here his honour stated the devise.]
Susanna, intermarried with William Wiley, some time before May Term, 1745, and before that time they must have entered and taken possession; for to that Term, an action of debt was brought, by Sarah and Mary, against William Wiley, and Susanna, his wife, late Susanna Prew, daughter and devisee, in the last will and testament of Caleb Prew, deceased. The declaration is lost, but the inference made by the Court was the most reasonable one ; that it was for the charge on the land devised to Susanna, and brought against them as devisees, and terre-tenants. A judgment was obtained, and a sale by the sheriff to William Wiley, and his heirs and assigns for ever ; a deed was made and duly acknowledged. William Wiley devised these lands to his executors, to be sold, who made a sale to Caleb Wiley, and exeted to him a conveyance, as of the fee simple estate. Caleb Wiley then came into possession, and continued in possession, and on judgment obtained against him in 1789, the lands were sold by the sheriff, and conveyed in due form to Joshua Bailey, and his heirs and assigns for ever. . Possession has been held under this sale until the present ejectment Was brought, *531 before the commencement of .which, in 1814, Susanna Prew died, leaving the present plaintiff, her .eldest son and heir at law. The Court instructed the jury, that the law was with the plaintiff, and he was entitled to recover.
Our first enquiry is, what estate did Susanna take, in fee' simple, or in tail? The devise to the widow, of one moiety during life, and the charge of two thirds, of the'value thereof, to Sarah and Mary, if there was a defect of expression as to the nature of the estate devised, would form conclusive evidence of an intention to devise in fee; for every devise imports a benefit intended, which in this instance never could be, if Susanna took in tail; (for the power of barring issue in tail, never enters into the mind of a testator;) but here is a technical devise in tail; ‘‘ if any one of my said children die without issue, the inheritance to descend to the next eldest, and their lawful heirs, from generation to generationIt is impossible to disregard the operation of these words, which have a plain and obvious meaning, inconsistent with an estate, absolute and unlimited. Susanna took as. tenant in tail; and if the case rested, on the construction of the will alone, the plaintiff would bé entitled to recover; but on the state of facts, .other questions of some difficulty arise, new in some degree, but in investigating which, we are not left without analogous principles.
Our inquiries are : 1st, As to the nature of the estate, acquired by William Wiley, on the sale tQhim. Did he acquire an estate in fee, or in tail, or were the proceedings of 1745, a mere nullity, leaving him in statu quo, tenant by the curtesy? For if those proceedings, were erroneous, they are not now before this Court, on writ of error to reverse them. Indirectly, and not directly they are; and if they were, and this Court should be of opinion th|y are erroneous, this would not restore the land to the plaintiff..
2d, If William Wiley did not take a legal fee simple, is Caleb Wiley, the issue in tail, barred by limitation ?
Sd, Does his conduct furnish such a distinct ground of equity, that chancery would interpose by injunction, and prevent his recovery ?
What was the nature of these conditional fees before the statute de donis P He that had a fee conditional, or qualified, had as ample and great an estate, as he that had a fee simple absolute. Co.-Lit. 18; and that statute only rendered it inalienable by tenant in tail, preserved it from far *532 feiture for treason, beyond the life of the tenant in tail, and exempted it from payment of his debts; but it did not make it less an estate of inheritance, or change the quality in which the issue succeeded to the title; for the succession to fee simple, and to fee tail, are both equally considered as titles by legal succession, that is, by descent; the difference being only, that the inheritance in fee simple, existed before the statute, and the inheritance in tail was a modification of the former. Harg. LawTr. 572. It fortified the hereditary title, and led it along, and protected it on its passage in the path prescribed by the donor. Here Caleb Wiley takes, as heir to his mother, the donee, as the stock designated by the gift, exactly as he would have done, before the statute de dorm took away the power of alienation, after issue born. But it did not affect the estate of the donor in any other respect., ' The radical error, on which the opinion of the Court is founded is, in considering with respect to this charge, the estate tail in the ancestor, and the interest of the issue, as separate and distinct interests; whereas, in truth, for this purpose they form but one estate. By the statute, the estate is divided into two parts, leaving in the donee, a particular kind of estate, denominated an estate tail, and vesting iñ the donor, an ultimate fee simple of the land, expectant on the failure of issue, which expectant estate takes effect as a remainder or reversion; and in considering the action of 1745, as a personal action against Susanna, for a personal duty, whereas, it is against the fund; she being the. only person representing that fund, who could be brought into Court. The judgment against the land, including the remainder expectant on the failure of issue; the charge, a general charge on the land, and not on the particular estate of any individual, the judgment must consequently be commensurate "with the charge, and the charge' considered as part of the land ; for where a sum of money is given originally and primarily out of land, a will with that charge, must be executed with the solemnity required in devises of land,, because such charge is considered in equity, as part of the land, since it can only be raised by a sale, or disposition of part of the land; and this is analogous to the rule of law, that a devise of the rents and profits, is a devise of land itself. Brudenell v. Boughton, 2 Atk. 268. Why is it, that the sale of Caleb Wiley's estate did not pass his interest *533 as issue in tail? Because, as was properly determined, he. took by descent from Susanna. The sale on any judgment obtained for a charge by .a testator, must be a sale of the absolute estate, and the issue be bound by such sale, unless by. the will itself the charge is made a special one, on some special interest .devised; for the issue take according to the will of the donor, which is the only rule and guide of descent in tail; and it was part of that will, that the money should be raised out of the estate. There is no foundation in the objection, that the issue in tail are not parties, for the ancestor represents them. They might aver, that the sale was made by covin, or bring a writ of error, to reverse the ancestor’s. fine or recovery affecting the estate, by reason of the privity of blood and estate. Dyer, 90. This therefore never can be considered as a sale of any particular interest of Susanna, for so was not the charge. Two-thirds of the value of the place never could be raised by a sale of Susanna’s life estate; two-thirds of the value of the fee simple; for that is the true construction, and the meaning put by the testator, on the word value, in another part of the clause1'; ‘‘ dividing the value among the survivors, or their lawful heirs ;”' thus considering the value of the land, as the land itself. We have heard much of the sanctity of the rule as to general intention. This supposed general intention has often destroyed all intention, ’ general and particular ofithe testator. It is said here, it was to preserve ,his estate in his family, from generation to generation; but if any clear intention is discoverable, it is this, to put, his daughters in equality'. To Susanna the favourite, the mansion place,' she paying Sarah:and Mary two-thirds of its value ; not the value of two-thirds of any particular estate devised to Susanna, but two-thirds of the whole inheritance ; for if her particular interest considered as something distinct from th,e inheritance, was only the subject, of the charge, Susanna is disinherited, and Sarah and Mary do not get that which their father intended; for ■ who at that day, who now, would give two-thirds of the value of a fee simple, for a life estate in the whole, even in houses, much less in lands ? The testator intended, and that is the construction of law, that the charge should be satisfied by a sale. How else could Susanna raise it? The personal estate is devised wholly to the mother, for a power to sell is perfectly consistent with an estate tail. When any *534 matter is granted, there it is implied that the grantee shall enjoy it; and the law in such grant must afford the means of enjoyment. There cannot be two judgments, one against Susanna and her life estate sold, and on her death, another against the issue in tail, and so on from generation to generation, until the whole was raised. Nor was it the intention of the testator, that Sarah and Mary should wait Susanna’s death, much less the death of unborn generations ad infnitum, before they could force a payment of their whole legacies. There is very high authority to support the doctrine, that in England, on the statute of wills, a legacy arising out of lands, was recoverable in the common law courts, by ac-' tion of debt against the devisee and terre-tenants. Twisden, (Sir T. Raym. 24,) says it was so decided in the King’s Bench; and Holt, in Ewer v. Jones, 1 Salk. 415.2 Ld. Raym. 937, clearly held the law to be so. The remedy is now in chancery, because chancery can afford the most adequate relief; and it is for this reason, we find so little on this subject in the common law reports, and not that the action is not supportable at common law. In Atkins v. Hill, Cowp. 287, it is observed, that the discovery and relief given in a court of equity, is so preferable a remedy, that it has drawn thither all suitors, and therefore in fact, there is scarcely an instance, of a legatee attempting to sue at law. In New York, Livingston v. Livingston’s executors, 3 Johns. 189, the charge is considered, not as a personal duty which would descend on the personal representatives of such devisee, but that the heirs of such devisee, are chargeable at law, as terre-tenants, and owners of the land. At a very early period in Pennsylvania, the action of debt, against the heirs and terre-tenants, was adopted as the remedy for the recovery of such charge; and the matter was most maturely considered by the Chief Justice of this Court, in the case of Brown v. Furer, in which his opinion was delivered the last session at Lancaster, that a charge on land by a testator, is not personal on the devisee; that the land is the fund to be looked to, in whatever hands it may be; and that in Pennsylvania, from necessity, there being no court of chancery, the remedy must be by this action, and he rather inclines to think the devisees, terre-tenants, and executors, are the proper parties, and that this form of action was in use in early times, and the judgment is to be entered, so as to. charge the land, and not the person of the devisee.
*535 This charge operates as a judgment, and sheriffs, in the sale of lands, are bound to take notice of it; for where lands charged with a legacy are sold as the estate of the devisor, the legatee was let in as a judgment creditor to receive out of the purchase money the amount of his legacy. Nichols v. Posthlewaite, 2 Dall. 131. By the substitution of the action of debt in Pennsylvania for the bill in chancery, so far as the courts of chancery could grant relief by bill’in compelling,a sale, this action of debt will produce the same effect here, If a legacy is charged on land, the land itself shall be sold. .2 Str. 38. What then is the course in chancery ?
On a devise of a certain sum to be paid out of the receipts and profits of land, if the profits will not raise a sufficient sum within a reasonable time, a, sale of the land itself will be decreed. Heycock v. Heycock, 1 Vern. 256. Berry v. Askham, 2 Vern. 26. and Jackson v. Farrand, Id. 424. In Partridge v. Pawlet, 1 Atk. 467, the rule as to payment of interest on a legacy charged on. land is, that the tenant for life pays one-third; the reversioner -two-thirds. When the principal came to be paid, the same rule would hold. ' But the decisions go all the length of this case. Sadd v. Carter, Prec. in Ch. 27. A devise of lands to A, for life, remainder to such child or children as should be living at the death of the survivor, and to their heirs equally to be divided, A paying 40/. to B; this is a charge, not only on A’s life estate, but on the remainder. The Court decreed the land to be sold for the payment of the money, and of the overplus of such sale, defendant to have such part of it as was answerable to his life estate. It is to be observed, that the only parties to this bill were the legatees on the one hand, and the devisees for life pn the other, and yet the Court decreed a sale of the whole estate. If it. was only a charge on the estate for life, if the first taker died the day after the testator, the charge would die with him. But suppose the devisee dies before the testator, the charge shall remain as charged in the hands of the heir; and this has been determined in Wigg v. Wigg, 1 Atk. 382. A, devised his lands to his son Thomas, on condition that he shall pay his children 90/. with clause of distress and re-entry. Thomas died in the testator’s life-time; the son of the eldest son of the testator entered on the land, as heir, and sold ; the charge is a continuing one on the l$nd, and the chancellor permitted *536 the legatees to bring in a bill to have the lands sold. It is true, he observes, that if there had been no clause of re-entry the legatee had no lien on the land, but the heir should enter ^01' the condition broken ; but he is considered in equity as a trustee for the legatee. Nothing can more strongly prove, that the charge has no dependance on any particular estate devised, for it must bé raised, though the particular estate to which the condition of payment is annexed never came into existence. Lands devised to the heir paying,is no condition,but ■will raise a trust. 2 Freem. 278. pi. 248. Devise of lands to a stranger paying, &c. is a condition,.—but in case of an heir, it is not; but the heir enters for condition broken ánd recovers in ejectment. Being a charge expressly created on the land, it will bind the land in his hands after recovery in ejectment. Hodge v. Raison, 1 Ves. 47. But in Pennsylvania, a devise to. the eldest son. and heir at law, paying the other children, it is the law, that such son would, not be considered as the heir where lands descend equally, and therefore the legatee may enter as for a condition broken. Ruston v. Ruston, 2 Yeates, 54. An ejectment could have been supported by Sarah and Mary, and if the condition went to the heir at law, he would take in trust for them, and they might bring an ejectment in their own names. If, in 1745, they had brought an-ejectment, recovered, .taken possession and enjoyed it for 70 years without an offer to redeem by payment of the legacy, it would be difficult to support the position, that the issue in tail could now have disturbed that possession. If a court of chancery would have decreed a sale, and if the parties had had recourse to the. only adequate remedy, and accomplished a sale by the substitution of this action against the devisees and terre-tenants, when it is considered, that this, from early times, has been the usual legal remedy by proceeding in rem, as in debt, and that the judgment is a judgment de terris, it appears to me, that the whole estate' of. Caleb Prew, by virtue of these proceedings, became vested in William Wileys at least, that it was a binding sale of the whole interest of Susanna Prew and her issue, claiming by descent, per formam doni.
The sale to William Wiley, and his acceptance of a conveyance from the sheriff in fee, does not amount to a discontinuance, and therefore give him a defeasible fee. For in 1 Smith, .205,and 1 Teates, 389, it is decided,that a purchaser at sheriff’s *537 sale of the estate of a tenant in tail may suffer a common récovery, and bar the issue in tail, by vouching the tenant in tail. This could not be, if such sale was a discontinuance; for by a discontinuance the ancient legal estate tail, which ought to have survived to the heir at law, is at least suspended, and for a while discontinued. Nor could the act of the husband alone operate as a discontinuance, either by acceptance of a conveyance in fee, or by himself conveying a fee ; for though by the common law the alienation of the husband alone, who .was seised in right of his wife, worked a discontinuance of her estate, yet now by stat. 32 H. 8. c. 28, it is provided, that no act of the husband shall work a discontinuance of, or prej udice the inheritance or freehold of the wife, but that after his death, she or her heirs may enter on the land. Runn. on Eject. 42.45. I hesitated for some time, whether equity would have decreed more than a sale of two-thirds, or whether Sarah and Mary could have supported their ejectment for more than two-thirds; but in another view of this case it becomes unnecessary to give any opinion how that would be ; for if more were sold than equity would direct, and a possession under that sale for more than twenty-one years, the limitation act gives to such possession a positive right. But admitting the proceedings to be a nullity, for want of jurisdiction of the cause, or of proper parties to the suit, the possession of Caleb Wiley, certainly that of Joshua Bailey, was adverse to Susanna. Bailey purchased it as the fee simple estate of Caleb Wiley; claiming the fee simple he came into possession ; he made expensive improvements, which he would not have made as a mere tenant during the life of Susanna, then an old woman. The fact of the adverse possession at leasts should have been left to the jury, for this is a question of fact sometimes involving the motives and intentions of a party, which it is the province of a jury to decide. Cummings v. Wyman, 10 Mass. 468.
The possession of one tenant in common is the possession of all. It is not adverse to his co-tenant, but a sale and uninterrupted possession for more than 30 years, by one tenant in common, without any act done, or complaint made, or claim set up by his companion, has been held a sufficient ground for a jury to presume an actual ouster of the other. Nor does it require the possession to have been originally adverse ; for a man may come in by a rightful possession, and yet hold on *538 adversely without title. As if a tenant pur outer vie, hole over for 20 years after the death of cestui qui vie, such holding over will be a complete bar to the remainder-man or reversioner, because it is adverse to his title. Fisher v. Prosser, Cowp. 217.
The judgment in 1745, was a condemnation of the fee simple to satisfy the charge, for no court of law or equity could direct a sale of Susanna's interest only; and what is conclusive, is this :—that if Susanna's interest had not sold for a sufficient sum to discharge the whole lien, they could have no proceedings against the issue in tail, when their right came into possession; the demand could not be split into different causes of action, affording different legal remedies against several parties, as their respective interests became vested in possession. It is, therefore, manifest, that if William Wiley did not acquire the fee simple, he did not acquire any estate, and that he remained tenant by the curtesy, and Susanna tenant in tail, the estate tail never discontinued, and that on his death Susanna had a right of entry; and if Susanna did not enter for twenty-one years, the adverse possession would bar her issue in tail. This is clearly established, and I shall barely refer to Martindale's Lessee v. Troop, 3 Harr. & M'Hen. 244, in the General Court and Court of Appeals of Maryland. The principle there decided was this:—that the issue in tail, whose ancestor having a right of entry by force of the entail, loses that right by adverse possession, for the period prescribed by the statute of limitations, is in virtue of that possession barred of his entry on succeeding to the same land.
It remains to consider this case on the last head of inquiry. Does the plaintiff stand in that situation, that a court of #chancery would restrain his recovery by injunction? If he does, he never can recover in ejectment in Pennsylvanias for if the plaintiff in ejectment is in equity bound to make a title to the defendant, for part of the premises, the Court will stay execution, until that title is secured. 2 Binn. 93.
Acts of bare acquiescence of the issue in tail, could not have the effect of postponement; but where such issue have been active in the sale, and have received the whole benefit, much more so where they are parties to it, chancery will interpose, not by or on account of legal but of equitable estoppel. Caleb Wiley bought from the executors of his father’s will, *539 not an estate tail, but an estate to him, and his heirs and assigns, for ever. On that title he acquired the possession. This estate, and this possession, are sold for the payment of his debts; they are paid.by the purchase money, without any notice to the purchaser. This sale would be considered in equity as made by him, and the purchase money paid over to his use; and would it be endured in equity, that he should disturb the possession, and hold the land discharged of the payment of his debts ? This forms, in my opinion, a distinct ground for equitable relief; for if issue in tail in possession, claiming the fee, sell during the life of his ancestor, chancery would interpose, and prevent his recovery; nay more, they would decree that such issue should suffer a recovery, for the use of the grantee, as is stated in Powell v. Powell, Prec. in Ch. 279. So in Raw v. Potts, ib. 35, where Jl, being tenant in tail, remainder to B, A, not knowing of the remainder, made a settlement on his wife, by way of jointure, which B, who knew of the estate, engrossed, and after the death of A, recovered in ejectment, against the widow ; she was relieved, by perpetual injunction. So in a similar case, Hunsden v. Cheyney, 2 Vern. 150, where a mother, the absolute owner of a term, (the same being settled on her in law,) having been present at a treaty for her son’s marriage, and having heard him declare, that the term was to come to him, on his mother’s death, and attested the deed whereby the reversion of the term was settled on the issue of the marriage after her death, she was compelled to make good the settlement. Here, all things conspire to hold out to the world, that Caleb Wiley was in possession, claiming under his father’s will, and not by descent from his mother. He suffering, silently, the estate to be sold as his own in fee, the money to be appropriated to pay his debts, shall his attempt to take advantage of this mistake, by which he received so great a benefit, be attended with success? I suppose both parties to be equally innocent; shall he now say, I did not know of this, but it is a most lucky hip, and I will avail myself of it, and' having received the value of the land, I will now recover the land itself? This would be against every principle of equity, for there is a positive fraud in attempting to profit by the mistakes of another, which are the consequences of our own misrepresentations, or of the false expectations raised in his mind, by our illusory behaviour; and *540 there is a negative fraud, in imposing a false appearance on another by silence, where silence is treacherously expre ssive. In equity, therefore, where a man is silent, when in conscience he ought to have spoken, he shall be debarred from speaking, when conscience requires him to be silent. And the protecting jurisdiction of chancery has stretched itself to those cases, where the illusory hope has been raised, not by words, but simply by looking, or by silence, while false impressions which we are either able to correct or verify, are inducing a fruitless expenditure. Roberts Fraud. Conv. 130. 133. Thus if I persuade another to act, upon a confidence that I can make him a grant, or give him an Interest, which, at the time of the promise, is out of my power, and afterwards, by an unforeseen accident I am enabled to do the thing promised, equity will compel the performance. Id. 135. The rule is general, that to take advantage of a mistake where one has the opportunity or means of putting it right, is a fraud in equity. Id. 524. 530.
Now here, the plaintiff acted fraudulently, by his treacherous silence, by which he was a gainer, or he acted by mis-' take, which he has now the means and opportunity of setting right, by conveying that estate, the value of which he has received, and under all the extraordinary circumstances of the case, chancery would compel him to set right. I do not say, this would be the effect of a sale by the sheriff, of the interest of the issue in tail, but rest on the issue in tail claiming the fee simple on a judicial sale of the fee simple, and coming into possession under that right. My mind has been led by this course of reasoning, to the following conclusions:
1st. That Susanna took under her father’s will, an estate tail.
2d. That by the proceedings by Sarah and Mary, against Susanna, and her husband, authorised by that will, the fee simple vested in William Wiley.
3d. That if the fee simple did not vest in William Wiley, the estate tail of Susanna did not, nor was it, discontinued, nor William Wiley gain a defeasible fee, but remained tenant by the curtesy ; and consequently Caleb Wiley, under the conveyance from his father’s executors, acquired no title, but that his possession was wrongful, and adverse to Susanna, and that Bailey having come in under that possession, and *541 Susanna-not having entered within 21 years after her right of entry accrued, her issue in tail are barred, and,
4th. That in every view of the case, the plaintiff is not entitled to recover, but that he stands postponed in equity j not concluded by legal estoppel, but by an estoppel in equity, arising.from his acts and silence, which render it against all conscience that he should recover.
Judgment reversed, and a venire facias de novo awarded.

 Ante. 213.