Duncan, J.
delivered the opinion of the Court.
To constitute a valid disposition óf real estate by will, it is necessary that it should be in writing; put into writing in the testator’s life time. Signing by the testator, formal publica- . cation, attestation by subscribing witnesses, are solemnities not- required by our laws ; but it must be proved by two witnesses. Before the statute of frauds in England, any scrap of writing, though it was neither signed, sealed nor written by the testator, might have been established by one witness as a will of lands, Rowel, Dev.31; for when a man, sick-a-bed,sent for a lawyer, and requested his advice in making his will, and the lawyer took short notes thereof, and went away, and about eight o’clock in the morning wrote the will in pursuance of the notes, and agreeably to the will of devisor declared to him, and the will was finished about eleven o’clock on the same day, and the devisor died about twelve, so that he did not hear the will read.; this was a good will in writing. Brown v. Sackville, Dyer, 72. Without multiplying authorities, two things were essential to constitute such writing a valid disposition of lands: first, that the will must be written by the direction of the devisor, or by his consent; for if done by one present of his own head, and not afterwards read to him, the will would not be good; second, that it must be put in writing in the life time of the devisor. As to the kind *455 and degree of proof required under the statutes of 32d and 34th Hen. VIII, and under the Act of 1705, the only difference is, that the statutes did not require two witnesses, and our act does. Does this special verdict find the two facts; the will written by the appointment of the devisor, and reduced to writing in his life time, and that these facts were proved by two witnesses? The verdict finds that John Rossetter, the devisor, did 'dictate and direct his will to be made in writing,for the devise and bequest of his estate, both real and personal; and, thereupon, his testament and last will was reduced to writing, according to the said John Rossetter’s directions. These facts were proved by two witnesses. It would have been more satisfactory, had the jury expressly found the fact, that the devisor was alive when the will was put in writing; but the finding amounts in substance to this, for the verdict finds, that it was written at the time, detailed on the testimony of John Smith and Elizabeth Loxton. John Smith testifies, that after the will was reduced to writing, it was read below stairs in the presence of Dr. Rush and Capt. Meany ; that they came up stairs and advanced to the bed side ; that Dr. Rush called the devisor repeatedly by name ; that he did not answer; that the doctor took him by the arm or shoulder, calling out, captain Rossetter, captain Rossetter, and shaking him by the arm, and that at that moment he died. Elizabeth Loxton, testified, that they went down stairs to write the will; they were very dilatory about it, and that he could not sign it when they returned; that Dr. Rush tried to make him speak, but he could not, and she really believed he was about drawing his last breath; that when they went up to him, his wife was sitting behind him, and he leaned back upon her shoulder. The reading the will below would take some time, and when they came up stairs he was still alive, though in in the article of death. The will, all the devises were completely put in writing, and ready for his signature before he expired. A will, where the devisor directed several distinct devises, and he happened to die after the completion of one, and before the other was put in writing, the devise being completely put to writing, as to the first, was a valid devise, 3 Rep. 31. But here all was finished in the devisor’s life time. It is sufficient if the will be written according to his direction before he dies, though he become senseless before it is written. Alleyn. 54. The decisions under the act of 1705, *456 have gone to the full extent of the decisions in England, and foave adopted and applied them. Where speciafinstructions for drawinga will were proved by two witnesses, and a will was drawn conformably thereto in the testator’s life time, thoughneyer reacj t0 him, or executed by. him, this was decided to be a good will in writing, Walmsley v. Read, 1 Yeates, 87. And in Eyster & Kagey v. Young, 3 Yeates, 511, a written memorandum of instructions taken by the scrivener from the testator, was proved by two witnesses; the scrivener had withdrawn to another room, and a formal will was drawn up by him; while reading it to the devisor, and before the whole was read, he died ; the scrivener observed his eyes to stare in a fixed position, and thought his last moments approaching; this memorandum was established as a will in writing. No question was made on the trial, about the written, unsigned will, which had been delivered to Dr. Rush, the loss of which appears to have been admitted; the contents were proved without opposition, and as the writing existed at the time of the testator’s death, secondary evidence, proof of its contents, by two witnesses, would be admissible, and established as a will in writing. For these reasons, the Court are of opinion, on the facts found by this special verdict, that this will was a good and valid will to pass real estate; a will duly executed and proved. It remains to be considered, whether a devise of property, (a disposition of a man’s whole property,) carries real estate. Property signifies every species of property; it is nomen generalisimum, and comprehends all his earthly possessions ; it is equivalent to a disposition of “ all I am worth in the world,” “ whatever else I have in the world,” u all my substance,” which have been construed not only to pass land, but to pass the fee simple; it is stronger than worldly effects, which will carry real estate, if such appears from the whole will to be the intention of the|testator. Property', ex vi termini, includes real estate, unless it would appear from the the whole will that the testator used the term in a restrained sense, and intended to confine it to personal estate. Here there is no such apparent intention, but a manifest one to dispose of his whole estate, and not die intestate as to any part of it. Judgment is, therefore, to be entered on the verdict for the plaintiff.
Judgment for the plaintiff on the verdict.