[SUNBURY, JUNE 15, 1829.]

## *II* BROWN *against* DYSINGER and another.

### APPEAL.

Parol evidence of declarations, made by a purchaser at sheriff's sale, that he was bidding for another, is admissible to establish a trust for the person for whom the purchaser declared he was bidding.

A tender of money in behalf of an infant, made by his uncle, the father being dead, but the mother living, *held* to be good, although the uncle had not then been appointed guardian.

A tender, partly in silver coin, and partly in bank notes, offered to be converted into silver, but the opposite party refusing to accept any money, *held* to be good.

The words " *any earthly property,*" in a will, if they appear from the context not to have been intended to include real estate, will be confined to personal property.

If a naked power to sell be given to executors, the land in the mean time descends to the heir, and an ejectment may be brought for it in his name.

A lease, unfairly obtained from a party in possession of the land, will not prevent the lessee from contesting the title of the lessor.

APPEAL from the decision of the Chief Justice, at a Circuit Court held for *Mifflin* county in *April,* 1829.

Ejectment for a tract of land, claimed by *Samuel Brown,* a minor, suing by his guardian, *William Brown,* as heir at law to his father, *Samuel Brown,* against *Jacob Dysinger* and *David Walker.*

On the trial it appeared, that the premises in question having been taken in execution on a *Levari Facias* against *Daniel Shortel,* were exposed to sale by the sheriff, when *David Walker,* one of the present defendants, publicly declaring, that he was bidding for *Samuel Brown,* (the father of the plaintiff, who was an infirm man, in poor circumstances, and at the time resident on the land,) became the purchaser for the sum of nine hundred dollars. That sale, however, was set aside on some ground, not material to the present controversy, and a second sale afterwards took place, when *David Walker* repeated the public declaration, that he was bidding for *Samuel Brown,* and again became the purchaser for ten hundred and fifty dollars. A deed was executed to *David Walker* by the sheriff, bearing date *November* 22d, 1822.

The plaintiff's counsel called *William Zeigler,* to prove the declarations made by *David Walker* at both the sales, to which the defendants' counsel objected, but the court, on argument, permitted the evidence to be given; and after examining *Zeigler,* and several other witnesses to that point, a tender of the purchase money, with interest, was proved to have been made to *Walker* by the uncle of *Samuel Brown,* who was not then his guardian, though subsequently appointed by the Orphans' Court. The mother of *Samuel*

(Brown *v*, Dysinger and another.)

*Brown* was then living. The tender was made partly in bank notes, and partly in silver coin. *Walker* refused to receive it; saying, the paper money was no better than rags. The uncle offered to convert it into money, but *David Walker* still refused. The defendants gave evidence to disprove that of the plaintiff, in regard to the transactions at the time of the sale, and further gave in evidence the will of *Samuel Brown*, which, so far as is material to the explanation of this case, was in the following words:—

"Respecting *any earthly property* which God hath been pleased to give me, and which I may own at the time of my dissolution, I order as follows, viz.—That all my property be brought to public sale as soon after my death as may be deemed proper, and all my just debts paid out of the proceeds thereof, after discharging the funeral expenses, and the remainder to be appropriated to my dearly beloved wife *Agnes*, and now surviving child, *Samuel*, if any remain; and do appoint my beloved wife and *Calvin Blythe*, Esq. to be the executors of this my last will, and that it may be executed according to the genuine intent thereof. In witness," &c.

They likewise gave in evidence a lease of the premises from *David Walker* to *Samuel Brown*, dated *December* 30th, 1822. The plaintiff, to rebut the last mentioned evidence, called a witness, to show, that *David Walker* had threatened to turn *Samuel Brown* out of possession, if he did not execute the lease: That *Brown* was then very sick with a consumption, and died some time in the following month of *August*.

The jury, under the direction of the court, found a verdict for the plaintiff, and a motion for a new trial on the part of the defendants being denied, the present appeal was entered. The reasons filed in support of the motion were as follows:—

"1. Because the court admitted the parol evidence offered by the plaintiff, contrary to the provisions of the statute of frauds and perjuries.

"2. The court erred in the construction of the will of *Samuel Brown*, in deciding, that the plaintiff was entitled to recover.

"3. The court erred in deciding, that this case was not within the statute of frauds and perjuries.

"4. The court erred in deciding, that *William Brown* had authority, on the 3d of *January*, 1824, to make a tender to *David Walker* for *Samuel Brown*, a minor.

"5. The court erred in refusing to instruct the jury, that the acceptance of the lease given in evidence, by *Samuel Brown*, the father of the plaintiff, was a release and abandonment of his claim, under the alleged parol contract.

"6. That the verdict is against the law, the evidence, and the justice of the case.

"7. That the tender in bank notes was not such a tender as would entitle the plaintiff to recover."

The argument was conducted by *Potter* and *Blythe*, for the ap-

(Brown *v.* Dysinger and another.)

pellants.—The *first* and *third* exceptions may be taken together. They present the main question. The act of *March* 21st, 1772, for the prevention of frauds and perjuries, is explicit, that no estate in lands greater than a lease, not exceeding three years, can be created otherwise than in writing. No parol declarations of trust in the case of a larger estate are of any value. It is, however, admitted, that there are two exceptions. 1. The case of a resulting trust; and 2. The case of fraud. By a resulting trust, we understand a purchase by A. with the money of B. If A. takes a conveyance of the legal estate to himself, and it is clearly and unequivocally proved, that the purchase was made by him with the money of B., he becomes the trustee of B. without any written acknowledgment or declaration of the trust. But this was not the case in the present instance. *Walker* had no money of *Samuel Brown's* in his hands. *Brown* was a poor man. *Walker* had no claim on him to furnish the amount paid to the sheriff, by way of reimbursing himself for the purchase; and if he had possessed any evidence to charge *Brown*, the latter was unable to raise the money. The great rise in the value of the property has led the friends of the minor to come forward, after the death of the father, make a tender, and bring the ejectment.

It is not a case of fraud either in fact or law. The case of *Thompson's Lessee* v. *White*, 1 *Dall.* 424, which will be cited against us, was one of plain fraud. To induce the wife to execute a deed, the husband made the most solemn promise, that he would by will or otherwise, settle an estate in a manner *previously* agreed upon, calculated for the benefit of the wife's relations. The husband, surviving the wife, retained the property as his own, and died without making such provision. This was a direct fraud upon the wife and those who were intended to take after the husband's death. But what fraud in respect to *Brown* can be found in the conduct of *Walker?* Did *Brown* contemplate bidding himself, and was he prevented from doing so by the declarations supposed to have been made by *Walker?* If *Walker* had not bid at all, would *Brown* have been a sufferer? Would he have sustained any loss whatever? How then can he or his heir be received at a distant time to gain by an act, the total omission of which would have been no loss to him? The conveyance of the sheriff to *Walker*, to his own use, in fee, was an act of legal notoriety, and amounted to constructive notice to *Brown* that *Walker* took an absolute estate to himself; but he makes no application to the court, nor personally to *Walker* to have his imaginary trust declared. So far from it, that, on the 30th of *December*, about six weeks after the sale, he takes a lease of the very land in question from *Walker*. This forms our *fifth* exception, and it is conclusive. It is impossible to suppose that *Brown* had the most remote idea of the land belonging to himself, when he thus acknowledged himself to hold it as the tenant of *Walker*. The evidence, which in all cases where an attempt is

(Brown *v.* Dysinger and another.)

made to raise a trust by parol, ought to be full, clear, and above all doubt, was confused and unsatisfactory as to the declarations of *Walker*, particularly at the second sale. (The counsel on both sides remarked minutely in the testimony.) But were we to give the fullest effect to the plaintiff's testimony on this head, it could not amount to more than a contract on the part of *Walker; for* the breach of which, *Brown*, if he could make out his case, would be entitled to recover damages. *Hughes* v. *Moore*, 7 *Cranch*, 176. *Crop* v. *Norton*, 2 *Atk.* 74. 1 *Bro. Ch. Ca.* 92. 2 *Johns. Ch.* 409. 2 *Mad. Ch.* 108, 109. *Wallace* v. *Duffield*, 2 *Serg. & Rawle*, 526. *Jones* v. *Peterman*, 3 *Serg. & Rawle*, 546. On the *fourth* exception, they denied the validity of the tender made on the 3d of *January*, 1824, by *William Brown*, the uncle of *Samuel Brown.* No person had, at that time, been appointed by the Orphans' Court guardian of the minor. The mother, the natural guardian, was living. The uncle was appointed guardian by the Orphans' Court on the twentieth of the same month. Till then, he had no authority to act on the part of the minor. The tender, therefore, was the act of a stranger, and could not inure to the benefit of the infant. He might have disclaimed it when he attained full age. It did not perfect his supposed equitable interest as heir of the *cestui que trust*, and, therefore, he cannot support an ejectment. The tender itself, being partly made in bank notes, was of no effect, by whomsoever it was made. Under the *second* exception, it was argued, that the ejectment ought to have been brought in the name of the executors of *Samuel Brown*, and not in the name of the minor. "Any earthly property I may own, &c." is to be construed like the word "estate," in other wills, or "my lands." The power to sell, given to the executors, vests the interest in them for the purpose of sale. 7 *Cranch*, 176.

To these arguments, it was answered by *Blanchard* and *Hale*, that the case must be decided on other principles than those which apply to resulting trusts. Fraud, either in fact or in law, will create a trust; and the fraud may be, and frequently can only be proved by parol testimony. He who has committed the act which constitutes the fraud, will never be permitted to shelter himself under the same act. Here *Walker* came forward as the public and avowed bidder for *Brown*. The bids were thus the bids of *Brown*, and the purchase was the purchase of *Brown.* A sense of humanity, a desire not to put to inconvenience a sick man, residing on the premises, must have had an effect on the by-standers; and if the premises were consequently sold even to a small amount below their real value, it was fraud in *Walker*, after playing such a trick, to avail himself of its success, and take a title to his own use. The case is quite as strong as that of the husband in *Thompson's Lessee* v. *White.* To this point they cited *Gause* v. *Wiley*, 4 *Serg. & Rawle*, 539. 1 *Sm. L.* 381. *Stewart* v. *Brown*, 2 *Serg. & Rawle*, 461. *Gregory's Lessee* v. *Setter*, 1 *Dall.* 193. *Lessee of German*

(Brown *v.* Dysinger and another.)

v. *Gabbald,* 3 *Binn.* 302. The *first* and *third* exceptions cannot, therefore, be sustained. The *second* applies to the construction of the .will. Whether the words, "any earthly property," include real estate, is immaterial. A naked authority to sell all that the testator orders to be sold, is alone given to the executors. The real estate, in the mean time, descends to the heir at law. But, the other parts of the will sufficiently indicate, that he was speaking only of personal estate. The action was rightly brought in the name of the heir. In regard to the tender, (*fourth* exception,) it was made by the uncle as next friend to the infant; and, in point of law, he was more properly to be considered such than the mother. He had also a contingent interest as next heir to his nephew, which the mother was not. If a proper tender is made on behalf of an infant, in a case where, if of full age, he would acquire or confirm a right by a tender, it shall never be inquired by whose hands it is made. *Johnston* v. *Gray,* 16 *Serg. & Rawle,* 366. *Walker* did not object to the tender, because it was made by a person not regularly appointed guardian, nor because it consisted in part of bank notes, but absolutely refused to receive any money on account of the transaction, persisting to hold the land.

The validity and effect of the lease, which form the subject of the *fifth* exception, were left to the jury under all the circumstances of the case; and, they have found it not to be a waiver of the rights of *Samuel Brown.* Their verdict was just. It has been decided, that the general rule which precludes a tenant from disputing the title of his landlord, does not apply where the lease has been obtained by misrepresentation or fraud. *Miller* v. *M'Brier,* 14 *Serg. & Rawle,* 382. Here, it was a part of the system of fraud, which tinctured the whole of the transaction on the part of *Walker,* to present himself to *Brown* as the legal owner of the land, and to threaten him with expulsion if he did not execute the lease. *Robinson* v. *Eldridge,* 10 *Serg. & Rawle,* 140. On the whole, it was contended, that the verdict was consistent with natural, and technical equity, and ought not to be disturbed. 1 *Smith's Laws,* 391. 1 *Dall.* 193.

The opinion of the court was delivered by

SMITH, J.—This was an ejectment for a tract of land in *Mifflin* county, alleged to have been purchased by *David Walker,* the defendant, for the use of the plaintiff, in which both parties claimed under the same title. The cause was tried before Chief Justice GIBSON, on the 15th of *April,* 1829, when a verdict passed for the plaintiff, and a motion for a new trial was overruled; whereupon, the defendants appealed to this court. *Seven* reasons are assigned for a new trial, of which the *first, third,* and *sixth,* may be considered together. The substance of these reasons is, that the parol evidence admitted, was contrary to the provisions of the statute of

(Brown *v*. Dysinger and another.)

frauds and perjuries; that the court erred in deciding, that the case was not within that statute; and, that the verdict was against the law, evidence, and justice of the case.

It is alleged, that the difficulty in this case arises from our act of assembly for the prevention of frauds and perjuries, in which it is declared, that no interest in lands shall pass, but by deed or note, in writing; and, it is contended, that no parol proof can be admitted to contradict, add to, diminish, or vary a deed or writing; that, although there are exceptions to the rule, and cases may be found, in which parol proof has been received, notwithstanding deeds had passed between the parties; yet, the proof offered and given in this case, is not within the exceptions, nor the decisions of those cases; because, the parol evidence, directly contradicted the sheriff's deed to *David Walker;* and in short, that the evidence of the parol agreement set up, was not full and explicit.

This testimony, on a fair and candid examination, will not, I apprehend, be found liable to these objections.  The witnesses have stated explicitly, that *at* the sale, *David Walker* declared he was buying the land for *Samuel Brown,* and at different times, *after* the sale, said he had bought it for him; that when the crier asked him for the customary fee on sales, he declared that he had bought for his friend *Samuel Brown,* whose circumstances he knew, and therefore, should not ask the fee, and that this took place at the second sale.  It also appeared, that *Samuel Brown* was a sickly man, and was so long before, and at the time of the sale.  From *James Kinsloe's* testimony, it appeared, that one *Myers* was bidding for the land at the first sale; at which time, *David Walker* and the witness stated to *Myers,* that he, *David Walker,* was bidding the land in for *Samuel Brown;* that on this, *Myers* ceased to bid, and shortly after, the land was struck off to *David Walker.*  Other witnesses proved, that *David Walker* declared he was buying the land for *Samuel Brown.*  And *William P. Elliot* says, he thought, though he was not certain, it was entered on the sheriff's list, "bought by *Walker* for *Brown.*"  The question then is, whether the engagement of *David Walker,* concerning this land, although not in writing, is made void by our act for preventing frauds and perjuries; which, in fact, was, and is the turning point of the cause. We are of the opinion that it is not, and that the parol evidence was properly admitted by the Chief Justice on the trial of the cause. The object of the act was, the prevention of fraud; and, to allow it to be interposed as a bar to the performance of this parol engagement, would, in my opinion, encourage the very mischief which the legislature intended to prevent.  *David Walker,* at the sheriff's sale, declared, again and again, that he purchased for *Samuel Brown.*  Although he afterwards obtained a deed for the land from the sheriff to himself, yet, in equity, he was, under the circumstances, a trustee for *Samuel Brown,* for the engagement he had made enured to *Brown's* benefit; and to this effect is the decision in the case of

(Brown *v.* Dysinger and another.)

*Stewart* v. *Brown*, 2 *Serg. & Rawle*, 461. To me it is evident, that the conduct of *David Walker*, was calculated to do an injury to *Samuel Brown*, inasmuch as it prevented others from bidding and purchasing; for his declarations clearly led those inclined to purchase, to believe he was acting for a poor man, that he was buying for him, and not for himself. No doubt, *Samuel Brown* was induced by *David Walker* to rely on him, and, therefore, did not take any other steps to secure the land, and *David Walker* should not reap the benefit of such conduct; nor can he, for a trust thereby arises to *Samuel Brown*, for whom he becomes a trustee. To decide otherwise, and allow him to hold the land, under such circumstances, would be supporting a breach of trust, and a fraud in law. See 4 *Serg. & Rawle*, 539, 540, and 570.

But, in addition to all this, it appears, that *Samuel Brown* was sickly, poor, and wholly unable to purchase himself; he therefore entered into an arrangement with *David Walker*, to purchase the land for him. To this, *Walker* freely agreed, and I believe at the time, fairly and honestly, intended to live up to the arrangement. Shall he, when *Samuel Brown* is dead and gone, be permitted to say, " I did not so purchase, I am not a trustee for him?"—The first sale was set aside, and some time elapsed before the second sale. *David Walker*, at the second sale, declared again, that he was purchasing for the use of *Samuel Brown;* he therefore must have considered the first arrangement in full force at the time; and immediately after this sale, we find, *Samuel Brown* claimed the land as his. If then both parties considered the arrangement in full force at the second sale, I am at a loss to discover any difficulty in this case; but must say, that the jury were right in finding for the plaintiff, and thereby declaring that *David Walker*, the purchaser, notwithstanding he has the legal title, is a trustee, holding for *Samuel Brown*. If *David Walker* did not act, and purchase for *Samuel Brown*, I would ask, how are we to account for his repeated declarations? Were they merely made to prevent others from bidding, and enable him to purchase the land for his own use, as cheap as possible?—And if so, shall he be the gainer, and reap the benefit of this deception, by appropriating the land to himself?—This would be unjust and fraudulent. Such conduct would, in the language of the Chief Justice, stop his mouth ever after, from asserting any thing, contrary to what he declared at and after the sale. *David Walker* ought to set this matter right; he has the opportunity of doing so, by conveying the land to the plaintiff, and taking from the office his money tendered to him; if he does not, he may be compelled to set it right, under the equitable powers of our courts of justice.—A majority of the court, are of the opinion, that the parol evidence was properly received, and that there was proved not only a fraud in *David Walker*, but a trust, which, though not declared in writing, was valid, notwithstanding the act of frauds and perjuries. The verdict then was not against the law,

(Brown *v.* Dysinger and another.)

the evidence, and the justice of the case, and a new trial was properly refused.

But it is said, (in the *second* reason for a new trial,) that the court erred in the construction of the will of *Samuel Brown.* It is contended, that *Samuel Brown's* estate or interest in this land, if he had any, by his will, vested in his executors; that his intention was to dispose of all his estate; that the words " all my earthly property," were sufficiently large to include real estate; and, that therefore his executors should have sued. It is true, the word " property," may sometimes include land. 6 *Serg. & Rawle,* 456. But in this will, there was no direction to sell the land, and therefore, there is nothing to prevent the heir from suing. I think the word *property* was not intended to include land, because, there are in the will no words of inheritance or perpetuity, applicable to the land; and it will not do to disinherit the heir by mere implication, or presumption. 2 *Binn.* 20. 3 *Binn.* 488. Here it is evident, it was intended to include personal property only, and the intention of the testator must govern. This objection to the verdict is therefore not sustained.

The *fourth* and *seventh* reasons, assigned for a new trial, will be considered together. It is alleged, that the court erred in deciding, that *William Brown* had authority, on the third of *January*, 1824, to make a tender to *David Walker* for *Samuel Brown,* the minor. It is true, he had not at that time been legally appointed the guardian of the minor; but he was his uncle, and surely one so near in blood may lawfully interpose as his next friend. We think an infant ought not to lose his inheritance, merely because he has no guardian; his uncle or next friend may act for him; he did so here; the tender by him was well made. But it is said it was in bank notes, and therefore not legal. It was partly in bank notes, but the uncle offered to exchange them for silver:—*Walker* thereupon refused, and said he would have none of it; so that after such a declaration, it was not necessary to do more, and the tender was good and sufficient.

In the *last* place (the *fifth* reason,) it is contended, that the acceptance of a lease by *Samuel Brown* from *David Walker,* was an abandonment of his claim. However strong this circumstance may appear, it is to be remembered, that it was contended on the evidence in the cause, that the lease was improperly obtained, and at a time when *Samuel Brown,* in his then state could not refuse to sign it. Whether it was so obtained, was submitted to the jury with all the facts attending it; the jury have passed on it, and found it under the circumstances, not to be a waver or abandonment of right. I think the submission to the jury for their decision was correct. A tenant may impeach his landlord's title, if induced to take a lease by misrepresentation and fraud. *Miller* v. *M'Brier,* 14 *Serg. & Rawle* 382, and *Hamilton* v. *Marsden,* 6 *Binn.* 45;

in which case it was held, that the lessee might contest the title of the lessor, where he threatened to turn the lessee off, if he did not take a lease. By the verdict in the case before us, the lease was impeached. We have then presented to us, the case of an agent of a poor and sick man, conducting, if not in bad faith, at least fraudulently in law: we see a trust proved, and a legal fraud in the agent, and we are called upon, to pronounce the operation of the law in such a case. Our answer is, that *David Walker* should transfer the land to the plaintiff according to the trust. If this be refused, it is in this state to be enforced by an ejectment; for having no court of equity, we consider that as already done, which in equity ought to have been done; and therefore, in a case, in which a court of equity would decree a trust, or direct a conveyance, the courts of this state, with the aid of a jury, will enforce the same by a recovery of the land in an action of ejectment. I refer to *Stewart* v. *Brown*, 2 *Serg. & Rawle*, 461. *Vincent* v. *Huff*, 4 *Serg. & Rawle*, 298. *Gause* v. *Wiley*, 4 *Serg. & Rawle*, 538, and *Peebles* v. *Reading*, 8 *Serg. & Rawle*, 484. The motion for a new trial is therefore denied, and the judgment of the Circuit Court affirmed.

TOD, J., dissented, and delivered the following opinion:—I do not take it to be at all material in the present case, that the *fourth* section of the *British* statute of frauds and perjuries is omitted in our act of assembly; for it is not damages, that are now demanded for non-performance of an alleged parol contract; but the plaintiff sues by ejectment, claiming possession of the land itself, and alleging an actual transfer of the title.

Beyond a doubt the words of the act of assembly are clear and positive against the plaintiff: but for a long course of years, perhaps from the date of the *British* statute, parol titles, created under certain particular circumstances, have been sustained by the rules of equity against the strict words of the law, by a train of decisions sanctioned sometimes by legislative authority, so that there are now admitted decided exceptions, as well known as the law itself. But it certainly has for many years past been usual for courts of justice to regret, that these exceptions were ever made from the statute by construction, and to declare that under no pretence whatever, should any new exceptions be introduced.

In my opinion, most clearly the Chief Justice was right in admitting the evidence as offered. But after the whole evidence had been heard, was it such as to take the case out of the statute, and give a title to land: or in other words, the jury having upon such proof found a verdict for the plaintiff, ought the court now to interfere and set aside the verdict? Has the parol title here been made out by proof so unexceptionably clear, as to bring the case within any of the established exceptions to the statute?

(Brown *v.* Dysinger and another.)

I must say, that to me the verdict appears to be decidedly against the weight of evidence. The testimony is by parol throughout. There is no part performance: no fact: no one single act done, or offered to be done by *Walker*, or by *Samuel Brown*, jr. Mere words spoken, which in their own nature are so exceedingly easy to be mistaken or perverted, form the whole of the plaintiff's title in this ejectment.

Whatever there is of fraud or trust in the case upon which *Brown's* equitable claim is supported against the legal title of *Walker*, depends upon four witnesses, *Zeigler*, *Kinsloe*, *Elliot* and *Warwick*. These four principal witnesses were called by the plaintiff, and one witness by the defendant. To show how little dependence is to be put upon the remembrance of words spoken relative to contracts for real estate, it happens that the plaintiff's witnesses agree neither with the defendant's witness, nor with each other. *Zeigler* and *Elliot*, concur in stating that *Walker* repeatedly declared that he was buying the land for *Brown;* but the only circumstance which makes this evidence of any use in the case, viz. that these declarations were at the time of the second sale by the sheriff, is positively denied by *Kinsloe*, who swears that all those declarations by *Walker*, were at the first attempt to sell, one full year before, and that not one word was uttered upon the subject at the second sale. *Kinsloe* adds further a most material fact, that one condition of *Walker's* promise at the first sale was, that a debt due from *Brown* to *Walker* was to be let in, as the witness called it, and paid. *Kinsloe* swore also that there was an express exception of a few acres, how many he did not say, for *Nancy Ferguson* near the still house, stating the reasons for the exception. *Warwick*, the fourth of the plaintiff's witnesses, who was present at the second sale, proves these words by *Walker*. "*I intend to give it to Brown, and I intend to let Kinsloe have a chance of the part he is concerned in; and I will reserve a part for Nancy Ferguson.*" On cross-examination, *Warwick* stated further, that *Walker* at the same time complained that *Brown* had disappointed him in money, but the witness could not recollect the particulars.

*Curran*, the defendants' witness, states a material fact, unsaid by any of the rest, that another condition of the arrangement at the first sale was, that *Brown* was to pay down four hundred dollars, and this is strongly confirmed by *Kinsloe*, stating that *Walker* was not to lay out his own money.

Clearly, if any single fact is well made out by the evidence, it is that some reservation was intended for *Nancy Ferguson*. But without any notice of the positive exception on her behalf, the jury have awarded the whole tract to the plaintiff directly against his own proof.

*Curran* and *Kinsloe*, were the only witnesses who ever saw *Walker* and *Brown* together conferring upon the subject of the the land. They both prove some essential previous conditions

(Brown v. Dysinger and another.)

which the plaintiff did not pretend were performed.   There is nothing improbable in what they swore.   The reverse would seem to be absolutely incredible.   Yet the jury would appear totally to have disregarded the only witnesses who were present when the two parties were together, and who, if a parol bargain existed, could be able to state the terms of it with any correctness.   The jury have depended rather upon loose accidental expressions, uttered without connexion or meaning as far as the full terms of a contract are necessary to understand the meaning of it; and of all the witnesses who prove these loose uncertain expressions only one of them, *Elliot*, has thought it material to mention that *Walker* was intoxicated at the time.

It is an established rule of chancery never to decree against the words of the statute of frauds, in any case whatever upon mere parol proof, where that proof is contradictory.   *Rowton* v. *Rowton*, 1 *Hen. & Munf.* 91.

My impression is, that the plaintiff could not recover the land, even if the statute of frauds were not in his way.   But under that statute, beyond a question, the verdict appears to me to be wrong. There is in the case no part performance, nor the pretence of it. But, it is argued at bar, here is a trust, a fraud, which I deny, if by trust and fraud, are meant the same things that are meant by those words in a court of equity.   Such a trust is not, as far as I can discover, to be found in any chancery proceedings, as that of a man having purchased a legal title to land in his own name, with his own money, being called on and enforced to convey to another, by parol proof of a bare promise without consideration, the merest *nudum pactum*, in favour of one whose sole interest in the title was what the promise created.   There appears no more fraud here than what is implied in every non-performance of a promise.   An action at law could not, I think, be sustained for damages for breach of such engagement.   And as to chancery, it is laid down that even before the statute of frauds, equity would not execute a mere parol agreement not in part performed.   `Sugden on Vend.* 86.

That a gratuitous promise will not support a bill in equity, any more than it will an action at law is shown by 3 *P. Wms.* 131, 317. 1 *Vern.* 12. 1 *Ves.* 507. 2 *Ves.* 310, 547. 7 *Johns. Rep.* 207, 332. 10 *Johns.* 246, 594.

There are many authorities which, in my opinion, would clearly show that the present case is not one calling for equitable relief against the words of the statute.   1 *P. Williams*, 771. 5 *Mass.* 133. 1 *Dessaus.* 289. 9 *Mass.* 510, 533. 11 *Mass.* 342. 15 *Mass.* 85. 16 *Mass.* 221. 4 *Cranch*, 235. 5 *Johns. Rep.* 272. 1 *Root*, 59, 549. 3 *Johns. Rep.* 216. 7 *Cranch*, 176. *Prec. Chancery*, 69. *Smith L.* 393, notes.

But the main thing in the case is the inconclusiveness of the proof.   Even *Brown* himself, though he lived for about a year after *Walker's* deed from the sheriff, and during nearly the whole of

(Brown *v*. Dysinger and another.)

that time appears to have been in full possession of his faculties, and attending to his business; and though two or three witnesses swear to his declarations relative to the land, yet, during all that time, there is not the least evidence, that he alleged any trust or charged *David Walker* with any fraud, or pretended to have any shadow of title to the land; but, on the contrary, took a lease for a year on the shares, binding himself to keep up the fences, and restore the possession.

This lease would, I apprehend, amount to a discharge and surrender of parol claims to the land, if he had any. It is argued, that this coming under lease must have been compulsory. There is no proof of compulsion, nor, to my mind, any probability of it; for the man's last will, drawn apparently with the utmost care and minuteness, and specifying some of the smallest articles of personal property, yet, mentions not a syllable about the plantation which this verdict says he was then the owner of.

If the statute of frauds cannot protect *David Walker* in his legal title, there seems one peculiar hardship in his case. In *England*, and in all those states in which courts of equity are established, the man whose freehold is attacked by parol proof and alleged promises, would generally have the privilege to be himself sworn, and on his oath to contradict or explain the evidence. But by our mode of proceeding in *Pennsylvania*, *Walker's* mouth is closed. So, that a witness who arrives at the middle of a conversation, may be sworn as to one half, without the right of the defendant even to state to the jury what the other half was. In my opinion, the parol proof which is to dispense with the statute of frauds, ought to be stronger and clearer here than in any country where they have a special chancery jurisdiction. The verdict being, as I think, decidedly against evidence and law, I am for setting it aside, and awarding a new trial.

ROGERS, J. and HUSTON, J. were absent.

Judgment affirmed.