## JOEL P. JENCKES v. EDMUND L. COOK.

A fraud, either actual or constructive, may be proved by parol, and parol evidence of declarations made by a purchasor at a mortgagee's sale that he was bidding for the mortgagor, is admissible to establish a trust for such mortgagor.

A court of equity will relieve against a fraudulent purchase, by converting the purchaser guilty of the fraud into a trustee for those injured.

Where a party through fraud or misrepresentation induces another to sign a lease, the party so signing will not be estopped from contesting the title of his lessor to the property so leased.

A farm owned by J. was sold at public auction, under the power of sale contained in a mortgage. C. agreed to attend the sale and bid off the property for J. It was so understood and announced at the sale, and those who would have otherwise bid against C. declined to do so when it was understood that he was bidding for J. It was struck off to C. at the amount of the incumbrances, being from $1,000 to $2,000 below its actual value. Afterwards C. refused to convey the farm to J. *Held*, that C. was a trustee for J., and had no other interest in the farm than to be made whole for the moneys paid by him, with interest and all sums equitably due him for his services.

BILL IN EQUITY, to compel a conveyance by the respondent to the complainant of a certain farm in Cumberland, and to enjoin the respondent from prosecuting a special court action against the complainant for the recovery of said farm. The facts of the case are fully stated in the opinion of the court.

*R. W. Greene and T. C. Greene, for complainant.*

*G. H. Browne, and Aldrich and Jenckes, for respondent.*

BRAYTON, C. J. The plaintiff was the owner of a farm in Cumberland, described in the bill. On the 1st day of July, 1861, he had executed a mortgage upon it to the Woonsocket Institution for Savings, to secure the payment of the sum of ·$2,200 loaned him by that institution, and which was payable. And on the 6th day of July, 1863, he had executed another mortgage of the same estate to one Arnold Carpenter, to secure the payment of a promissory note for $1,000, payable six months from that date. His last mortgage contained a power of sale upon condition broken. The note not having been paid at maturity, Carpenter, the mortgagee, advertised the estate to be sold at public auction on the 12th day of February, 1864, in pursuance

of the power given him in the mortgage. The day of sale arrived; the conditions of sale were stated, namely, that $50 of the purchase money should be paid down, and the residue at the end of twenty days, when the deed was to be given. The plaintiff, then having no means of paying the sum due to Carpenter, nor money to pay the $50, should he become the purchaser, procured the suspension of the sale until he could send to the defendant, a few miles distant, who, the plaintiff thought, would befriend him on this occasion, either by advancing him the money to arrest the sale or by paying the purchase money. He did send for him, and he came promptly. On his arrival there was a conference and negotiation at the plaintiff's house. The defendant had not then the amount of money necessary to pay the mortgage or the purchase money upon sale, and declined to do that; but it was agreed between them that the plaintiff himself should not bid, but that the defendant should attend the sale and bid off the premises for the plaintiff; that he should pay the $50 by the conditions of sale to be paid down; that the plaintiff should, within the twenty days, or on the day when the deed was to be given, pay to the defendant the $50 advanced, and should furnish the balance of the purchase money. If he should do so, then the deed was to be made to the plaintiff; if he should fail in this, then the deed should be made to the defendant.

The plaintiff was not to bid. The defendant was left to do what was necessary to be done to save the estate to the plaintiff, but as a condition of his bidding for the plaintiff, said he would not bid for the estate a greater sum than he should be willing to pay for it if he were buying it for himself.

It was understood at the sale, among the people attending there, that the defendant had been sent for to aid the plaintiff, and that it had been arranged between them that the defendant was to bid off the premises for the plaintiff. This was understood by those who came there to bid upon the estate. It was no secret; there was no concealment of the fact. Nobody supposed the defendant was bidding for himself or was to profit by the sale, but believed the benefit to be for the plaintiff solely.

Those who would have bid against the defendant had he been acting for himself, declined to bid when they understood his bid was for the plaintiff.

The estate was understood to be sold under the second mortgage and subject to the first. Though the sum bid was to be equal to the amount of both, the purchaser was to pay only the balance above the amount due on the first, and by the deed he was to assume the payment of the first. The amount of both was understood to be about $3,500, and it was so stated, that being sufficient to pay the mortgagee who had advertised it for sale. When the defendant's bid rose to that sum all further bidding ceased, nobody desiring to bid over the plaintiff or to take the estate from him, and the estate was struck off for that sum. That sum was much less than the value of the estate—from $1,000 to $2,000—in the opinion of many witnesses. It was less than some other persons would have given for the estate, and would then have bid against any other person than the plaintiff.

It was alleged in the bill that it was further agreed that the defendant, in the event that the deed should be made to him, would convey the estate to the plaintiff upon his paying to defendant the amount paid by him on account of the estate, and such sum as should be equitably due from the plaintiff.

The answer denies that, and avers that it was agreed that should the plaintiff fail to pay the purchase money so that the deed should be executed to the defendant, the defendant was then to hold the estate absolutely as his own.

There is some conflict in the testimony upon this point, but the evidence shows that it was understood at the time of the sale that the defendant was bidding for the plaintiff. The plaintiff so stated in his presence, which he did not deny. It was not understood nor stated at the sale that the defendant was in any event to hold the estate as his own. He said to the family, on his return from the sale, that he had bid off the farm for them, and they might easily pay for it.

To Ellis L. Blake, long after the sale, he said that he bid off the estate for Jenckes and not for himself. To Frederic M. Bal-

lou he said he went down and bid off the place for Jenckes, and had paid $50; had given Jenckes six months to pay in, and would give him a year. He told Jenckes he ought to settle the matter up.

To George Arnold he said he did not want the farm, and should not have bid but for Mary (Jenckes' wife); bid it off for her, and he wanted them to redeem it. He asked at another time if Joel was trying to raise the money; said he bid it off, and Joel was to pay the sum bid.

To Thomas Carpenter he said, Joel had not paid up as he agreed; he had given him time; time had been extended; that he had bid the farm off for him. He said upon another occasion to another person, he might have the farm if he would do what he himself *had agreed to do for Jenckes*, and that he had given notice to Jenckes to pay up and pay him for his trouble.

To Jenckes himself, he said he would convey whenever he could raise the money. To his wife he said the same; that Joel might have the farm for what he bid it off for.

At another time, when he wanted Jenckes to take a lease of the farm and to sign the lease, he said to him in presence of William H. Benton and his wife, as they testify, that he could have a year to redeem; he did not wish to keep it, but only wanted the money, and that the lease should not prevent his redeeming; that was only an agreement. This expression is what might be expected from him, in view of the fact that he was not willing to bid more than he would be willing to pay for the farm, and could not come to loss if it was not redeemed; that he obtained it at a less price than he could have done if it had been understood he could retain it to himself, and that the difference was so much loss to the plaintiff. It is true, as objected to by defendant's counsel, that the plaintiff has not made that effort to redeem that a man ought to make; he has been dilatory. But the defendant has never exacted it of him. He waived the non-performance and the forfeiture to him, and begged Jenckes to take advantage of the waiver. He saw, and no doubt felt, that to insist upon strict performance of the conditions at the day would operate unjustly, and leave in his hand value for

which he had not paid,—an estate in his hand at a less price than others would have paid, less than its value, and that it was so left because he had promised to bid it off for the plaintiff and for his benefit, without disclosing to those who would have given more, the fact, that it was in any event to profit him. So those who would have paid nearer its value ceased to bid, in order that they might favor the plaintiff.

The plaintiff continued in the possession of the premises, nominally, at least, as defendant's tenant; and defendant desired him to execute a lease by indenture, which the plaintiff declined doing, lest it might prejudice his right to redeem. He did, however, sign the counterpart of the lease signed by the defendant, upon his earnest representation and assurance that it should not prejudice the plaintiff's right, saying that it was only an agreement, and he could have the estate upon payment of the moneys due defendant; that he desired he should pay them, and would give him time to do so; that he did not wish the estate.

The lease is not set up as an estoppel against the plaintiff's claim, on the ground, that a tenant cannot dispute his landlord's title. This point was raised in the case of *Brown* v. *Dyringer & others*, 1 Rawle, 418, cited below, upon substantially the same state of facts, and was overruled, the court holding it inequitable to apply that rule under such circumstances.

The defendant, assuming this to be a bill for the specific performance of a contract, objects that it cannot be sustained, because the agreement set out in the bill is not in writing, and is void by the statute of frauds. Were the contract one for the sale of real estate, and the bill rested upon the contract alone, and the bill prayed to enforce it, the objection would be fatal. This bill rests upon other grounds; it seeks to establish a trust, and undertakes to state facts upon which a trust may be implied. And it is said to be a matter of some nicety to determine what facts are sufficient to raise a trust by operation of law.

A conveyance to one man where the purchase money is paid by another, makes the purchaser a trustee of the estate for him whose money is paid for it. And the same result follows when the money is advanced for a second taker thereof of another, as

a loan, and parol proof only is necessary. A trust cannot grow out of the violation of a parol agreement, unless fraud be present, actual or constructive; but whenever it is present, it may be proved by parol testimony, and a trust may be raised without writing.

Wherever the legal title to an estate is procured by means of an actual or constructive fraud, equity will give redress to the injured party. It is not necessary that actual fraud should have been intended. It is sufficient that the facts be such that they operate as a fraud, and the party is thereby deprived of his property, of an estate which passes to and is retained by another, either the estate which he before had, or the money vested in it. In none of these cases is it necessary to prove those facts by writing. The statute of frauds does not apply to such cases. Fraud either actual or constructive, may always be proved by parol. It is only to prevent fraud that the statute was made, not to cover or conceal it.

Had this estate been the property of a third person, it would be difficult to raise a trust upon the agreement alleged or upon the agreement proved, that being by parol, and no part of the consideration having been paid by the plaintiff. The plaintiff could lose nothing, but by the failure of the defendant to keep his promise; he has nothing vested in it, and is reduced to a simple breach of contract, and this, to support an action, must be in writing. But here the defendant is buying the estate of the plaintiff. The plaintiff has an interest in the land to be lost. If, under the promise of purchasing for the plaintiff, he by means of that promise obtain at a price below what it would otherwise have brought for the plaintiff, he then takes the plaintiff's estate without adequate consideration, and an interest much beyond what he has paid for, and to this extent his conduct operates as fraud upon the plaintiff.

In *Denton* v. *McKenzie*, 1 Dess. 289, the plaintiff's estate was to be sold; defendant agreed to buy it for plaintiff, and for his use; defendant advanced money, and did buy the estate, and took plaintiff's receipt for money lent. The deed was made to defendant, and he then claimed absolutely against the plaintiff.

It was held that he was trustee to the plaintiff, and was entitled to be paid all sums due from the plaintiff to him.

*Keith, administrator,* v. *Purvis,* 4 Dess. 114, was on execution in favor of Purvis; and he agreed with the debtor, if he would not bid, he, Purvis, would buy the land and give the debtor time to pay. Persons attending the sale to bid were told of the arrangement, and declined to bid for that reason. Purvis bought at one third its value. Purvis was held to be a trustee of the debtor, and held to pay what a third person would have paid.

*Cox* v. *Cox,* 5 Rich. Eq. 365. H. Cox's land was about to be sold by the sheriff. Cox, his brother, agreed to purchase for the owner of the estate, and when he could pay the money to have the benefit of what was done. He bought at a nominal price. After the death of H. Cox, he took a deed of sheriff to himself, and brought his action for possession. It was held that H. Cox, the owner, was entitled to redeem, and the plaintiff claiming under him was now entitled.

*Coombs* v. *Little,* 3 Green, Ch. 310. The complainant's land was to be sold upon execution. It was purchased at the sale by the defendant, in behalf of plaintiff, it being well understood that he might redeem on payment of what it cost the purchaser. It was sold low; others did not bid because it was understood the purchase was for the complainant. Held, he might redeem on payment of the moneys paid by purchaser.

*Brown* v. *Lynch,* 1 Paige, 147. Brown was the owner of a farm mortgaged to his brother. In a suit for foreclosure it was advertised for sale, bought by Lynch, defendant, for $1,450— worth $2,800—under an agreement that it should be for Brown's benefit. The mortgagee assented to the sale for less than the amount due, in view of the agreement. Others would have purchased, but that they were informed that the purchase was for Brown, and they declined bidding. The purchaser was held to be trustee for Brown.

*Brown* v *Dyringen & others,* 1 Rawle, 418. Land taken on execution against Shortwell, sold by sheriff. Walker publicly declared at the sale that he was bidding for Brown, the debtor, and purchased for $1,050, and took a deed in his own name, Novem-

ber 22, 1822. Brown tendered price and devised the estate to his son. Walker leased the premises to Brown, December, 1822. It was held that the case was not within the statute of frauds ; that the lease did not estop the devisee from claiming, and that Walker held in trust for him.

In all these cases where the party has acquired the legal title to the estate by paying the money of another under an agreement to buy for him, or, which the court treat as the same thing, where he has advanced money for that purpose, taking the security as for a loan, in either case the party thus acquiring title is held to hold in trust for that other party.

In all the cases now cited, where the estates purchased were the plaintiff's own, and the party purchases to save it for him, and pays his own money for that purpose, he is decreed to hold in trust and as mortgagee, holding the estate as security for whatever sum he may have paid for the estate to save it; and his expenses, if any were agreed and understood between the parties to be paid ; the mortgage redeemable like any other mortgage.

In this case, we think that if, after paying to the defendant all the moneys paid by him on account of the estate, with the interest thereon, which may remain unpaid, and his being made whole in the transaction for all that is equitably due him, there remain any value, that value belongs to the plaintiff.

The plaintiff is not to make money out of the defendant in these transactions, and his relief can only be to the end that the defendant shall not profit at his, the plaintiff's expense.

*Decree for the complainant for an account.*