**JOHN HALL, Jr. and others *against* JOSIAH M. BENNER.**

A purchaser at sheriff's sale before the deed is acknowledged, has not such a title to the land struck down to him, as will authorize him to give a lease of the premises; and if he does give such a lease to the defendant as whose property it was sold, it will not create the relation of landlord and tenant between them, so as to estop the lessee from disputing the title of the lessor.

The general rule of law, that a tenant shall not dispute the title of his landlord, is restricted to cases in which the lease has been fairly obtained, without any misrepresentation, management or fraud.

The date of a deed is *prima facie* evidence of the time of its delivery, but it is not conclusive.

The recital in a sheriff's deed, that the sale was made on a certain day, does not estop the grantee from showing by parol, that it was made on a prior day.

Whether a water-right and tilt-hammer are appurtenances to land, and will pass by a sheriff's sale, made by virtue of a judgment upon a mortgage of the land, depends upon the facts of the case, and must be submitted, as a matter of fact, to the jury.

If the court should decide from inspection of the papers, that such a right would pass as an appurtenant, it would be error.

WRIT of error to the court of Common Pleas of Centre county.

This was an action of ejectment brought by *Josiah M. Benner*, against *John Hall*, Jr. to recover three lots of ground, a house, black smith shop, tilt-hammer and water-right in the borough of Bellefonte.

The defendants took defence for the black smith shop, tilt-hammer and water-right.

*John Hall*, Sr. under whose title both parties claimed, was the owner of three lots of ground, which he held by deeds from *James Harris* and wife: the lots adjoined each other and were each described in the deeds from *Harris* to *Hall*, Sr. thus "containing sixty feet in front on Spring street, extending thence westward to the water edge of Spring creek."

*James Smith*, who was the owner of land on Spring creek, above and near to these three lots, by deed, dated 26th, April, 1806, conveyed to *John Hall*, Sr. "the right to erect a dam in said creek,

(John Hall, Jr. and others, *v.* Josiah M. Benner.)

upon the land of the said *Smith,* and to use the water of Spring creek, for the purpose of working a tilt-hammer and blade mill; and the said *Hall* to erect no other mill."

On the 4th of January, 1819, *John Hall,* Sr. and wife conveyed the said lots to *John Hall,* Jr. and described the property in the deed, thus "three certain lots of ground situate in the borough of Bellefonte, being Nos. 130, 131, 132, in the plan of said town, on the west side, and fronting on Spring street, adjoining each other, and extending westward to the water edge of Spring creek, (they being the same lots which *James Harris* and wife conveyed to *John Hall,* Sr.) together with all and singular the houses, out houses, and buildings, ways, woods, waters, water courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever thereunto belonging, or in any wise appertaining, and the reversions and remainders, rents, issues and profits thereof. Also, all the estate, right, title and interest, use, claim and demand whatsoever of the said *John Hall,* and his wife, in law, equity or otherwise howsoever, of in to or out of the same; to have and to hold the said three lots of ground, hereditaments and premises hereby bargained and sold, with the appurtenances, to the said *John Hall,* the younger, his heirs and assigns forever, warranting the within described three lots of ground, hereditaments and premises hereby bargained and sold, with the appurtenances, to *John Hall,* Jr. against all persons whatsoever."

On the 29th October, 1821, *John Hall,* Jr. executed a mortgage to *Roland Curtin,* upon these premises, in which they are described as "the three lots, Nos. 130, 131, 132, which *John Hall,* Sr. conveyed to *John Hall,* Jr. together with the buildings, rights, ways, water courses, and appurtenances whatsoever thereunto belonging, and in any wise appertaining."

There was an amicable judgment confessed by the defendant *John Hall,* Jr. upon a *scire facias,* on this mortgage, which was entered No. 3, November term, 1824. A *levari facias* issued on this judgment to November term, 1824, No. 4, upon which the property was sold to *Josiah M. Benner,* the plaintiff, for one thousand and five dollars.

To the admission of these proceedings in evidence the defendants objected: that they are not regular; the *scire facias* is not signed or sealed by the officer; not tested of any term; and the judgment purports to be entered before the test day of the writ.

These objections were overruled and exception was taken by the defendant.

After the sale to *Benner,* the sheriff who made it went out of office before a deed was executed; and by an order of the court, his successor executed a deed to the plaintiff, on the 26th April, 1825, which was acknowledged in open court the same day.

(John Hall, Jr. and others, *v.* Josiah M. Benner.)

The plaintiff then offered in evidence a lease for the premises in dispute from him to the defendant, dated 26th November, 1824.

The defendant objected to this evidence on the ground that *Josiah M. Benner* had no right to give a lease, not having received a deed from the sheriff, that the deed afterwards received by him recites the sale to have been made after the lease purports to have been executed, and that the writ of *levari facias* was not returned.

These objections were overruled by the court, the testimony admitted, and exception taken by defendant.

The plaintiff then gave evidence that the property was struck down before the date of the lease.

The defendants gave some parol evidence of the circumstances which occurred between the parties at the time the lease was executed, from which they contended that undue means were made use of by *Benner*, in obtaining the consent of *Hall* to execute it.

The defendants then offered to prove " that a considerable part of the shop is built outside of the three town lots, and on the right conveyed by *Smith* to *Hall* the elder, by deed, dated the 26th April, 1806; that on the 26th January, 1825, and after the mortgage was given, *Hall* the elder, conveyed this same right to *Hall* the younger, the defendant in this suit."

This evidence was objected to by the plaintiff. First. Because the defendant is a tenant, and cannot dispute the title of his landlord. And second. Because the written papers vest the title in the purchaser at sheriff's sale.

On both grounds the testimony was overruled by the court, who instructed the jury "that the plaintiff had shown a right to recover on every ground."

1st. As landlord, it is a sacred principle of the law, that the tenant shall not dispute the title of his landlord.

2d. That the fair and correct construction of the defendant's conveyance, mortgage, judgment, sale and sheriff's deed, vested the right to the whole property, whatever it was, in the plaintiff, and that the conveyance by *Smith* was an appurtenance, which attached to, and passed with the other property.

A verdict and judgment having been rendered for the plaintiff, the defendant sued out this writ of error.

*Blanchard* and *Hale*, for plaintiffs in error.

*Benner* having had no title whatever to the premises in dispute at the date of the lease, he could not create a tenancy, and that he had no right, is established by the case of *Hawk* v. *Stouch*, 5 *Serg. & Rawle*, 157.

If the lease was evidence at all, it was only admissible to show what *Hall* considered was sold to the plaintiff, and not as conclusive evidence of what the plaintiff's right was.

Whether the acceptance of the lease by *Hall* was a surrender of his title, was a matter of fact, which should have been submit-

(John Hall, Jr and others, *v.* Josiah M. Benner.)

ted to the jury, under all the evidence which was given, and which was offered to be given by the defendants. *Hamilton* v. *Marsden,* 6 *Bin.* 45. *Galloway* v. *Ogle,* 2 *Bin.* 468. *Jackson, ex dem.* v. *Vosburg,* 7 *Johns. Rep.* 186. *Miller* v. *McBride,* 14 *Serg. & Rawle,* 382. *Brown* v. *Dysinger,* 1 *Rawle,* 408.

There can be no intendment or presumption of what was conveyed to *John Hall,* Jr. previously to the execution of the mortgage, for the deeds are plain, and manifestly convey the three lots of ground and nothing else. The property now in dispute is not an *appurtenant* to the lots, but is of itself a freehold, which came to *John Hall,* Jr. by deeds separate and independent of those which conveyed to him the lots, and obtained at a different time: and that, after the execution of the mortgage, upon which the plaintiff's title is predicated: it is a property in addition to the lots and not at all embraced within the description as contained in the mortgage or any of the previous conveyances. Land cannot be appurtenant to land, 1 *Plowden,* 170. 3 *Saunders,* 401, cited *Bettesworth's* case, 2 *Rep.* 32. *Blackburn* v. *Edgley,* 1 *Peer Wms.* 603. *Smithson* v. *Cage, Croke Jas.* 526.

*Potter,* for defendant in error.

The terms of the several deeds which conveyed the title to the mortgaged premises are sufficiently comprehensive to carry the appurtenance which is now in dispute. *Pickering* v. *Stapler,* 5 *Serg. & Rawle,* 107. *Blaine* v. *Chambers,* 1 *Serg. & Rawle,* 169. *Dunbar* v. *Jumper,* 2 *Yeates,* 74. *Gray* v. *Holdship,* 17 *Serg. & Rawle,* 413.

The possession of the water right or appurtenant always accompanied the deeds; and it is apparent from all the papers that it was the intention of the father and the son that the tilt-hammer and the water-right was to pass by the deed. They never thought of conveying them separately until after this cause of action arose.

The lease to *Hall,* Jr. by *Benner* was voluntarily accepted, and cannot now be impeached. *Graham* v. *Moore,* 4 *Serg. & Rawle,* 467.

The opinion of the court was delivered by

Ross, J.—This was an ejectment for three lots of ground, house, blacksmith shop, and tilt-hammer in the borough of Bellefonte.

The defendants took defence for the blacksmith shop, tilt-hammer and water-right.

The first bill of exception was to the admission of the amicable *scire facias,* and the confession of judgment thereon, the 29th of October, 1824, for seven hundred and forty-two dollars and sixty-eight cents.

The objection to the *scire facias* was, that it was not regular; not signed and sealed by the officer, and not tested at any term:—to the judgment, because it purports to be a judgment before the test day of the *scire facias* on the mortgage.

The law is well settled, that a man may waive any right to a

(John Hall, Jr. and others, *v.* Josiah M. Benner.)

particular mode of judicial proceeding against himself. The plaintiffs in error could not have been proceeded against adversely on the mortgage in any other way than by ejectment, or by a *scire facias* under the act of assembly. But when the mortgagor is alone to be affected, he may agree to dispense with both these modes of proceeding, which have been provided, as well for his protection, as a remedy for the mortgagee. This is often done by the consent of the parties to save costs; sometimes to expedite the sale, and the collection of the money; sometimes to render a purchaser more secure in his title, at an earlier day than it could be otherwise done in pursuance of a previous agreement. The plaintiffs in error, on the 29th of October, 1824, entered an amicable *scire facias*, and judgment thereon, by agreement, with the mortgagee, for seven hundred and forty-two dollars and sixty-eight cents.

A *levari facias*, issued to the November term following. It might, very properly, be tested of the preceding term. It is done so in other cases, where execution issues on a judgment entered in vacation, to the next succeeding term.

To this course, all the parties in interest assented. There was nothing done in contravention of any rule of law or practice; nobody had any right to complain of it, because no one was injured; it was sanctioned by the plaintiffs in error, and acquiesced in by them until the trial of this cause. No motion was made to set aside the proceedings on the amicable *scire facias*, or the sheriff's sale under them; no writ of error brought to reverse them; they therefore, by their acts and their neglects, expressly or tacitly, waived all objections, if any existed. A judgment erroneous is good until reversed. 2 *Serg. & Rawle*, 142.   4 *Serg. & Rawle*, 467.

The record was evidence against them. 1 *Salk.* 276, 290. *Holt*, 292.  11 *Serg. & Rawle*, 168.

Whether the sheriff's deed poll duly acknowledged and certified under the seal of the proper court, as directed by the act of the 6th of April, 1802, would have been full and conclusive evidence against the person named in the execution, under which the premises were sold, is not a question now made. There was no error in the admission of the amicable *scire facias* and the proceedings on it.

The second bill of exception was to the admission of a lease, proved by the subscribing witnesses, from *J. M. Benner* and *P. Benner*, Jr. to *John Hall*, Jr. for three lots bearing date, November 26, 1824.

The defendant's counsel objected to it, "because *Philip Benner*, Jr. and *J. M. Benner* had no right to make a lease. They had not then got their deed. The sheriff's deed recites the sale as made the day after the lease purports to have been executed. The writ was not returned."

It is true a man cannot grant that which he hath not, or more

(John Hall, Jr. and others, *v.* Josiah M. Benner.

than he hath; although he may covenant to purchase an estate, and levy a fine to uses, which will be good. *Bac. Max.* 58. *Peck, Sec.* 65.

A lease doth properly signify a demise or letting of land, &c. unto another for a lesser time, than he that doth let it, hath in it. *Shep. T.* 266. *Plow.* 421, 432.

Assuming the above authorities to be law, it would seem to be very clear, that a man cannot make a valid lease to another who is in possession of land, when such lessor has no interest, title, possession or right of possession in the premises he lets.

The tenant, under a lease made by such a lessor, should never be estopped from disputing his landlord's title. To a tenant so circumstanced, the doctrine of estoppel is totally inapplicable, yet the lease was evidence. The acts and declarations of a party in interest, and to the suit, are evidence against him. *Whart. Dig.* 365, *pl.* 405. 1 *Dall.* 65. 10 *Serg. & Rawle,* 268. *Marshall* v. *Sheridan.*

The evidence was therefore properly admitted, both as the deed and as the declaration of the defendants below, having a direct relation to the matters in dispute.

The third exception was to the admission of the evidence of *William Ward* and *James M. Petrikin,* to prove that the property had been struck down before the lease was executed, and that the date of the lease is a mistake.

*Prima facie* every deed is supposed to be made the day it bears date. 3 *Liv.* 348. 1 *Sel. Pr. R.* 422.

But it takes effect from, and therefore has relation to the time, not of the date, but of its delivery; and this is always presumed to be the time of its date, unless the contrary do appear. The time of delivery is material; and is always to be *tried by a jury. Shep. T.* 72.

It would be easy to cite authorities on this point, and to illustrate the position laid down by a great variety of cases; but it would be a useless labour, as no doubt can be entertained of its correctness. It is however contended, that admitting the law to be as above stated, the defendant in error was estopped by the recital in the sheriff's deed, that the sale was made on the 27th November, 1824, from showing it was made on any other day. A general recital is no estoppel, yet a recital of a particular fact is so. 1 *Show.* 59. 2 *Leon.* 11. 3 *Leon.* 118. And the recital, to be an estoppel, must be material. 2 *Leon.* 11. 3 *Leon.* 118. The recital of the day when the property was sold is not material, and therefore the defendant in error was not estopped from showing the truth. A man is estopped to say any thing against his own deed. *Co. Lit.* 363 b. 2 *Black. Com.* 295. *Co. Lit.* 252 a. But this was not the deed of the defendant in error. It was the deed of the sheriff to him; it was the deed of a ministerial officer authorised to make the sale, whose mistakes in the execution of his duties should never

(John Hall, Jr. and others *v.* Josiah M. Benner.)

be permitted to prejudice the rights of the grantee by way of estoppel. There was no error in admitting this evidence.

The fourth exception was to the rejection of the following evidence offered by the plaintiffs in error. " That considerable part of the shop is built outside of the town lots, and on the right conveyed by *Smith* to *Hall,* the elder, that on the 26th January, 1825, *John Hall,* the elder, conveyed to *John Hall,* Jr. all his right under *Smith's* deed."

"This evidence was objected to, and overruled by the court. First. Because the defendant is a tenant and cannot dispute the right of his landlord. And second. Because the written papers vest the title of the property in the purchaser at sheriff's sale." .

If the opinion already given on the previous exceptions is correct, it is clear that the plaintiffs should have been allowed to prove what they offered; they had proved by *William Pettit,* " that he was present with *Benner* and *Hall,* heard *Benner* pressing *Hall* to take a lease; *Hall* down spirited; *Benner* said he was going away next day, and wanted it fixed. This was after the property had been sold. *Benner* said he might have it till spring on easy terms; did not want to turn him out; wanted him to take it; *Benner* said, if he did not take a lease, he would be under the necessity of removing him and obtaining possession by the sheriff; *Hall* said he wanted to see Mr. *Potter*; it was on the day before *Benner* was to start away; it was in the afternoon of the day."

This evidence of *Pettit,* corroborated as it was, by *Petrikin* and *Ward,* was sufficient, connected with the circumstances, under which the lease was obtained, to induce a belief that the lease was procured by management: by a *suggestio falsi* in alleging he had purchased the whole at sheriff's sale: that he had a right to dispossess them of the whole, and his hurrying them into the execution of the lease, without an opportunity of consulting their counsel or friends, as they expressed a desire to do, a measure suggested to *Benner* by Mr. *Petrikin,* as a safe one if he intended to hold the property.

The plaintiffs in error were not such tenants as precluded them from showing what they offered to prove. The very question trying was, whether the written papers vested the title of the property in the purchaser at sheriff's sale? If they did—what property? Was the tilt-hammer and water right conveyed by *Smith* to *Hall,* Sr. included in the sale made by the sheriff? Was any thing more sold than three lots? If not—did the three lots extend westerly beyond the water's edge of Spring creek? If they did, how far—did they include the shop, tilt-hammer and dam? A solution of these questions could only be made by an application of the description of the property contained in the deed, to the property claimed under it. The situation of the property claimed, and the relation it bore to the property described, could only be

(John Hall, Jr. and others *v.* Josiah M. Benner.)

ascertained by parol proof. The court, therefore, erred in rejecting the evidence.

The court instructed the jury, that the plaintiff below had shown a right to recover on every ground: First, as landlord—It is a sacred principle of law, that the tenant shall not dispute the title of his landlord. Second. That the fair and correct construction of the defendant's conveyances, mortgages, judgment, sale, and sheriff's deed, vested the right of the whole property, whatever it was, in the plaintiff; and that the conveyance by *Smith* was an appurtenance which attached to the property.

To this charge the plaintiffs in error excepted, and this forms the fifth bill of exceptions.

It may be true, as a general principle of law, that the tenant shall not dispute the title of his landlord. Yet the application of this general principle is restricted to cases in which the lease has been fairly obtained, without any misrepresentation, management or fraud.

A lease unfairly obtained, will not prevent the lessee from contesting the title of the lessor. *Brown* v. *Dysinger,* 1 *Rawle* 408, 415, and the authorities there cited. In that case, the only evidence of unfairness was, that *Walker* threatened to turn *Brown* out of possession, if he did not execute a lease; and that *Brown* was then very sick with the consumption, and died sometime the following month. The case under consideration is much stronger in favour of the tenant than that of *Brown.*

The correctness of this observation will be manifest by a reference to the testimony recited, in giving the opinion in this cause, on the third and fourth bills of exceptions. *Benner* urged the execution of the lease on the ground that he had a right to the possession of the whole of the premises, and that he had the right to remove *Hall* by the sheriff, and refused *Hall* time to consult his counsel.

This was a suggestion of a falsehood calculated to mislead *Hall.* *Benner* had at the time no title to the land. The *levari facias* was not then returned. If the property had been then struck off to him, there was no record of it. And if there had been, the sale was liable to be set aside at the instance of *Hall,* or his creditors; or to be defeated by his (*Benner's,*) neglect to comply with the conditions of sale.

Until the sheriff's deed to him was acknowledged, he could legally take no step to obtain possession; and even then, of nothing not contained in the deed. When acknowledged, he must have given three month's notice before he could have a jury called to dispossess *Hall,* which would have prevented him from removing him by the sheriff forthwith, as it was evidently insinuated he had a power to do. The proposition, which was made on the 26th of

(John Hall, Jr. and others *v.* Josiah M. Benner.)

November, 1824, was to lease it to him until spring, on easy terms; when it appears that the sheriff's deed to *Benner* was not acknowledged until the 26th April, 1825.

If this case does not exhibit all those features of management, unfair and uncandid conduct, as well as misrepresentation on the part of *Benner*, I should be at a loss to conceive one what would. It is evident that *Hall* was taken by surprise, and was artfully inveigled and hurried into the execution of the lease, without any opportunity of consulting his friends or his counsel, which he desired to do.

There is a wide difference between the case of a lease from a person having title or possession; and that of a lease from one having no title, no possession or no right to possession, as to the conclusiveness of the evidence. In the former case, generally speaking, the tenant would be estopped from disputing his landlord's title, unless fraud, mistake or imposition, be clearly proved. In the latter case, the lessee would not be concluded by the lease, because the obtaining a lease under such circumstances, would generally be considered as unfairly procured. The plaintiffs in error, on the facts disclosed by the defendant in error, should have been allowed to have impeached the lease: and the testimony of *Pettit* and the other witnesses should have been submitted to the jury.

The court unquestionably erred in the instructions given to the jury on the second point. The fair and correct construction of the defendant's conveyances, mortgages, judgment, sale and sheriff's deed, arising on the face of the papers, without reference to any extrinsic circumstance, is that nothing more was sold under the mortgage than what was contained in the description of the property mortgaged, and that nothing more vested in the purchaser.

The mortgage was for three lots, which *John Hall*, the elder, had conveyed to *John Hall*, Jr. Those lots were described by Nos. 130, 131 and 132, in the town plot of Bellefonte, with clearly designated boundaries: each containing sixty feet in front on Spring street, and extending thence westwardly to the water's edge of Spring creek. On the face of the title papers, these three lots, only, were conveyed to *Benner*. The sale was effected by a proceeding on the mortgage. The Sheriff could sell no property which was not described in the mortgage, and conveyed by it, unless from its very nature and quality, it was necessary to the enjoyment of what was actually described.

If a mill had been within the boundaries of the lots sold, and it had been granted, the water as used for the mill would have passed as appurtenant to it. 3 *Salk.* 40.

But if a man sells a mill *cum pertinentiis,* and the jury find a kiln was occupied with the mill for many years, the kiln shall not pass

(John Hall, Jr. and others, *v.* Josiah M. Benner.)

by those words, for it might be a lime kiln; and might have no relation to the mill: but if the jury had found it to be a malt kiln, it might be otherwise. *Shep. T.* 89–90.

Strictly speaking lands cannot be appurtenant to lands, or a messuage to a messuage. *Plow.* 170.  1 *Sil. Ab.* 91.

But the word *pertens* may be taken in the sense of *usually letten* or *occupied* with the land. *Plow.* 170.  Lands shall pass on a lease or devise of a house as pertaining to the same, when it hath been used and occupied with it, ten years or more: which is adjudged a sufficient time to make it appertaining to the house. *Cro. Eliz.* 704.  A grant of a manor *cum pertinentiis,* it is said, will pass all things belonging to the manor. *Owen's R.* 31.

But in all these cases, it must be ascertained by parol proof, what was usually letten or occupied with the land, the messuage, mill or manor, unless the extent of the claim appears on the face of the paper title: and even then to settle what lands, what waters, what dams or races have been used and occupied as appertaining to the property purchased.

All these are questions involving matters of fact, not appearing on the face of the title papers, and should have been submitted to the jury for their decision.  The court excluded very important evidence as to the relative situation of the two properties: refused to let the plaintiffs in error prove that the shop was partly situated on the tract bought of *Smith,* and not included in the mortgage, which went to shut out all the evidence of plaintiffs in error, as to their title, their possession and occupancy: the situation of the dam, the race, and the land purchased of *Smith;* and then instructed the jury that all the rights vested by the paper title in the defendants in error; and by it they were entitled to recover.

Who can say, on looking over the paper title, which was the most worthy: the property derived from *Smith,* or that derived from *Harris.*  That which is the most worthy is the principal: and when ascertained by a grant of it, that which is less worthy or incident, or accessary, shall pass by the grant.  The principal will not pass by the grant of the incident or accessary. *Accessorium non ducit, sed sequitur suum principale. Shep. T.* 89.

For any thing that appears to the contrary, the right derived from *Smith* may be the principal.  The deed from him to *Hall* senior, bears date the 26th of April. 1806.  The deed from *Harris* to *Hall* bears date the 27th of November, 1807.  The title to the property purchased of *Smith* is above a year and six months older than that of *Harris* to *Hall.*  The title to the property acquired by the purchase from *Smith* existed in *Hall* independent of the three lots granted by *Harris* to him, more than eighteen months prior to the title acquired from *Harris.*  It was not, therefore, during that time appurtenant to the three lots purchased of *Harris.*  If it ever became appurtenant thereto, when and how?  This can only be

(John Hall Jr. and others, *v.* Josiah M. Benner.)

shown by matter *in pais.* It was not purchased as a necessary appendant to the enjoyment of the three town lots, because it was purchased long before *Hall* became the owner of the three town lots. From all that appears, the property purchased of *Smith* was the principal, and the purchase from *Harris* was the accessary; and requisite to the full enjoyment of the rights purchased of *Smith.* These matters may be made to wear a very different complexion from that which they exhibit now on the face of the papers.

Judgment reversed, and a *venire de novo* awarded.